517 So.2d 1157 (1987)
STREAM AVIATION, INC., Plaintiff-Appellant,
v.
ANDERS PRODUCTION, INC., Defendant-Appellee.
No. 86-1095.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1987.
Rehearing Denied January 26, 1988.
Writ Denied March 25, 1987.
*1158 Carmouche, Gray & Hoffman, David R. Frohn, Lake Charles, for plaintiff-appellant.
Scofield, Bergstedt, Gerard, Mount & Veron, P.C., John B. Scofield, Lake Charles, Neal & Harwell, William T. Ramsey, Nashville, Tenn., for defendant-appellee.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
DOMENGEAUX, Judge.
Stream Aviation, Inc. (Stream), a Louisiana corporation, commenced this proceeding against Anders Production, Inc. (Anders) a Tennessee corporation. Stream alleges that it provided air transportation services to Anders from July, 1979 through February, 1981 for which it had not been compensated and seeks a money judgment in the amount of $132,624.48.
Stream, at the time in question, had but one shareholder, Matilda Gray Stream. Pursuant to a power of attorney executed by Matilda Gray Stream on November 6, 1972, her son, Harold H. Stream, III, was granted full power and authority to act for her in all her business affairs.
Anders also had but one shareholder, Lynn Anderson. Anders is the corporate entity of the Lynn Anderson Band.
Harold H. Stream, III, and Lynn Anderson were married on February 14, 1978 and were subsequently divorced on April 7, 1982. The alleged air transportation services for which Stream brought this suit, the transportation of Lynn Anderson and the Lynn Anderson Band, were provided Anders during the existence of the StreamAnderson marriage.
Subsequent to considerable legal postering by both parties, Anders moved the Trial Court pursuant to La.Code Civ.Proc. art. 966 (1960) (amended 1966, 1983 and 1984) to render a summary judgment. Anders contended that it was entitled to a summary judgment because Stream's aircraft did not have a Part 135 Air Taxi/Commercial Operator's (ATCO) Operating Certificate as required by the Federal Aviation Administration (FAA). 14 CFR § 135 et seq. Section 135.1 (A)(3), 14 CFR § 135.1 (A)(3) (1978) (amended 1980), provides:
Except as provided in paragraph (b) of this section, this part prescribes rules governing
The carriage in air commerce of persons or property for compensation or hire as a commercial operator (not an air carrier) in aircraft having a maximum seating capacity of less than 20 passengers....
Stream's aircraft was a 1964 twin engine G159 Grumman Gulfstream with sixteen passenger seats. Section 135.5, 14 CFR § 135.5 (1978), provides:
No person may operate an aircraft under this part without, or in violation of, an Air Taxi/Commercial Operator (ATCO) operating certificate and appropriate *1159 operations specifications issued under this part,
. . . . .
Anders submitted that because Stream did not have an ATCO operating certificate, it had operated its aircraft in violation of federal regulations and could not seek judicial enforcement of its alleged contract.
Stream acknowledged not possessing a Part 135 ATCO operating certificate, but contended that it was not required to obtain one because it was operating its aircraft in accordance with Part 91 of the FAA regulations. 14 CFR § 91 et seq. Section 91.181(b)(6), 14 CFR § 91.181 (1972) (amended 1973, 1976, 1980 and 1982), provides:
Operations that may be conducted under the rules in this subpart instead of those in Part ... 135 ... of this chapter, when common carriage is not involved, include
The carriage of company officials, employees, and guests of the company on an airplane operated under a time sharing, interchange, or joint ownership agreement.... (emphasis added).
Stream contended that its arrangement with Anders was a "time sharing agreement" as defined by § 91.181(c). Section 91.181(c), supra, defines a "time sharing agreement" as:
An arrangement whereby a person leases his airplane with flight crew to another person, and no charge is made for the flight conducted under that arrangement other than those specified in paragraph (d) of this section; ... (emphasis added).
Stream argued that it was only seeking reimbursement for the charges permitted by paragraph (d). Section 91.181(d), supra, permits the following charges under a time sharing agreement:
(1) Fuel, oil, lubricants, and other additives.
(2) Travel expenses of the crew, including food, lodging, and ground transportation.
(3) Hangar and tie-down costs away from the aircraft's base of operations.
(4) Insurance obtained for the specific flight.
(5) Landing fees, airport taxes, and similar assessments.
(6) Customs, foreign permit, and similar fees directly related to the flight.
(7) In flight food and beverages.
(8) Passenger ground transportation.
(9) Flight planning and weather contract services.
(10) An additional charge equal to 100 percent of the expenses listed in paragraph (d)(1) of this section.
The Trial Court granted Anders' motion for summary judgment. The Court held that Anders was entitled to judgment because FAA regulation Part 135 required that Stream have an ATCO operating certificate prior to engaging in the carriage of persons or property for compensation or hire. The Trial Court also concluded: (1) Stream had not leased its aircraft with flight crew to Anders; (2) the charges for which Stream was allegedly seeking reimbursement were not made pursuant to a "time sharing agreement"; and (3) the charges were not permitted by section 91.181(d).
The Court, in declining to enforce Stream's alleged contract, stated that when Congress enacted the Federal Aviation Act, 49 U.S.C. § 1301 et seq., Congress expressly preempted the field of air transportation. The Court cited as authority, 49 U.S.C. § 1305(a)(1) (1958) (amended 1984) which provides, in part:
No state ... shall enact or enforce any law, rule, regulation, standard or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having [Civil Aeronautics Board] authority ... to provide air transportation.
The Court concluded that FAA regulations have the effect of laws of the United States and that to provide Stream with the relief it sought would be contrary to the Supremacy Clause of the United States Constitution. U.S.Const. Art. VI, cl. 2.
On appeal, Stream contends that the Trial Court erred in granting Anders' motion for summary judgment. Stream, reiterating its position before the Trial Court, argues *1160 that it was operating its aircraft pursuant to a Part 91 "time sharing agreement" and that it is, therefore, entitled to the charges it seeks. Stream argues in the alternative that it may secure judgment under the equitable theory of Quantum Meruit. La.Civ.Code art. 2055 (1984) (formerly La.Civ.Code art. 1965).
La.Code Civ.Proc. art. 966, supra, provides, in part:
The judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
We are required on appeal to view the facts recited by Steam in the light most favorable to it and review the law to determine whether summary judgment was properly granted. Vascocu v. Singletary, 404 So.2d 301 (La.App. 3rd Cir.1981), writ denied, 409 So.2d 676 (La.1981); Robinson v. Estate of Haynes, 433 So.2d 294 (La.App. 1st Cir.1983). Subsequent to our review, we are unable to agree with the District Court. We, therefore, respectfully reverse the decision of the lower court and remand this case for further proceedings.
Our decision in this case rests entirely on the conclusion that the lower court incorrectly interpreted Section 1305 addressing federal preemption of the field of civil aviation. Having concluded that Anders is not entitled to judgment as a matter of law, we need not address the question of whether there was a genuine issue of material fact. We will not, in other words, decide whether Stream's aircraft should have had a Part 135 ATCO operating certificate or whether Stream was properly flying its craft in accordance with Part 91.
The Trial Court concluded that when Congress preempted the field of civil aviation it intended that state judiciaries be prohibited from enforcing valid contracts. Without considering whether Stream and Anders had a contract, we do not believe that Congress intended to prevent the judicial enforcement of legal contracts when an air carrier is operating a craft in violation of federal regulations. We believe that if Congress had intended to impose such a penalty it would have done so in a more explicit manner.
Section 1305, 49 U.S.C. § 1305, supra, as previously stated, provides:
[N]o State ... shall enact or enforce any law, rule, regulation, standard or other provision having the force and effect of law relating to rates, routes, or services of an air carrier having [Civil Aeronautics Board] authority ... to provide air transportation.
We believe it was the intention of Congress in enacting Section 1305 to prevent local interference with a matter it deemed to be of national significance, air commerce. We believe that Congress' intent was to prevent the enactment and/or enforcement of laws, ordinances or other acts which would directly or indirectly inhibit the promotion of efficient, nationally regulated air transportation. See, City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973) (invalidating a local ordinance prohibiting jet take-offs between 11 p.m. and 7 a.m.); United States v. City of New Haven, 447 F.2d 972 (2nd Cir.1971) (affirming a preliminary injunction granted by a federal district court restraining a city from complying with a state court order ordering it to obtain approval from a neighboring city to use property purchased in that municipality as a "clear zone" for an airport runway and forcing partial closure of a runway); County of Cook v. Priester, 22 Ill.App.3d 964, 318 N.E.2d 327, (1st Dist.1974), aff'd, 62 Ill.2d 357, 342 N.E.2d 41 (1974) (declaring local restrictions on aircraft weight to be, inter alia, in contravention of federal law); and City of Bensenville v. City of Chicago, 16 Ill.App.3d 733, 306 N.E.2d 562 (1st Dist.1973) (declaring that Congress has preempted state and local aircraft noise and air pollution regulations). The judicial enforcement of a contract for air transportation, subsequent to the faithful completion by the carrier, even when the carrier is not appropriately certified is not the enactment or enforcement of a law or regulation *1161 relating to "rates, routes, or services of an air carrier." 49 U.S.C. § 1305, supra.
Having concluded that Anders is not entitled to summary judgment, we need not address Stream's argument that it is entitled to recovery on the theory of Quantum Meruit.
For the above and foregoing reasons, we respectfully reverse the decision of the District Court granting the motion for summary judgment in favor of Anders Production, Inc.
This case is hereby ordered remanded to the District Court for further proceedings not inconsistent with the views expressed herein.
All costs of this appeal are assessed against Anders Production, Inc., the defendant-appellee.
REVERSED AND REMANDED.
GUIDRY, J., concurs and assigns written reasons.
LABORDE, J., concurs in the result.
GUIDRY, Judge, concurring.
I respectfully disagree with the opinion author's interpretation of the trial judge's reasons for granting summary judgment. It is not my understanding that the trial court concluded that 49 U.S.C. § 1305(a)(1) prohibits the enforcement by State courts of valid contracts for air transportation. Rather, in my view, the trial judge determined that, if a contract between the parties did exist, it was in violation of FAA regulations because Stream did not possess an ATCO certificate, and to enforce such an agreement would be contrary to the Supremacy Clause of the United States Constitution. In my view, we need not, at this point, consider whether Congress intended to prevent the judicial enforcement of contracts violative of FAA regulations. The record reflects genuine issues of fact concerning whether there was a contract between the parties; and, if so, whether such contract was entered into in violation of Section 135 or was a valid "time share agreement" under Section 91. These fact issues are material and preclude the rendition of summary judgment.
For these reasons, I respectfully concur in the result.