MYRON (MIKE) WOLENS *et al.*, Indiv. and on Behalf of Others Similarly Situated, Plaintiffs-Appellees, v. AMERICAN AIRLINES, Defendant-Appellant.—P.S. TUCKER, on Behalf of Herself and all Others Similarly Situated, Plaintiff-Appellee, v. AMERICAN AIRLINES, Defendant-Appellant.

First District (3rd Division)   No. 1—89—0918

Opinion filed December 12, 1990.

Jerold S. Solovy, Glenn K. Seidenfeld, and Marguerite T. Tompkins, all of Jenner & Block, of Chicago, for appellant.

Gilbert W. Gordon and Robert Marks, both of Marks, Marks & Kaplan, Ltd., and Michael J. Freed and Michael B. Hyman, both of Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., both of Chicago, for appellees Myron Wolens, Albert J. Gale, R. Craig Zafis, Bret Maxwell, and Robert Nelson.

Marvin Miller, of Chertow & Miller, of Chicago, and Nicholas E. Chimicles, Brenda M. Nelson, and Robin Resnick, all of Greenfield & Chimicles, of Haverford, Pennsylvania, for appellee P.S. Tucker.

JUSTICE WHITE delivered the opinion of the court:

Defendant American Airlines has filed this interlocutory appeal from an order of the circuit court denying defendant's motion to dismiss plaintiffs' complaints. Defendant contends that plaintiffs' claims are preempted by Federal law and barred by the commerce clause.

In 1988, plaintiffs Myron Wolens, Albert Gale, R. Craig Zafis, Bret Maxwell, and Robert Nelson filed a class action complaint against defendant in the circuit court of Cook County. The complaint alleged that in 1981 or 1982, defendant created the

AmericanAirlines AAdvantage frequent flyer program and solicited public membership in the program through advertisement in the national media and general mailings. Plaintiffs alleged that this solicitation constituted a unilateral contract offer which they accepted when they joined the program sometime prior to 1988.

Plaintiffs alleged that after joining the program and receiving materials from defendant detailing the available benefits and the mileage credits required therefor, they accumulated mileage credits by using the airlines and facilities of defendant and of those participating with defendant, even if other less costly or more convenient services were available. Plaintiffs further alleged that the value of their credits was substantially and adversely affected when, on May 18, 1988, defendant unilaterally instituted a retroactive reduction in the benefits available in exchange for the credits.

Plaintiffs charged that defendant's action in unilaterally and retroactively reducing program benefits constituted a breach of defendant's contracts with plaintiffs and all others who joined the program prior to May 1988. Plaintiffs also charged that defendant's action was in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*). Plaintiffs sought monetary damages and an injunction preventing retroactive application of any changes in the program to mileage credits earned prior to such changes.

Defendant removed the action to the United States District Court for the Northern District of Illinois on the ground that the complaint raised a Federal question exclusively committed to adjudication in the Federal courts by section 1305(a)(1) of the Federal Aviation Act (49 U.S.C. §1305(a)(1) (1988)). The district court remanded the action to the circuit court, finding that plaintiffs' complaint was grounded in State law and that nothing in section 1305 or its legislative history indicated a congressional intent to convert plaintiffs' State contract and fraud claims into Federal actions removable to Federal court. *Wolens v. American Airlines, Inc.* (N.D. Ill., Oct. 25, 1988), No. 88—C—8158.

Subsequent to the district court's order remanding the action to the circuit court, a second class action complaint was filed against defendant by P.S. Tucker. The second complaint, like the first, alleged that defendant's action in retroactively modifying the rules of the frequent flyer program constituted a breach of contract and violated the Consumer Fraud Act.

The two actions were consolidated, and defendant moved to dis-

miss both, contending that the causes of actions were expressly preempted by section 1305(a). Defendant also argued that plaintiffs' actions were barred by the commerce clause because subjecting airlines to State consumer fraud and common law contract claims would impose a burden on interstate commerce.

On March 20, 1989, the circuit court entered a memorandum opinion and order denying defendant's motion to dismiss. The court found that section 1305 did not preempt plaintiffs' claims and that nothing in the record indicated that prosecution of plaintiffs' claims would burden interstate commerce.

On March 23, the court granted defendant's motion for certification of a question for interlocutory appeal. The question certified for appeal was: "Whether plaintiffs' claims are preempted by the Federal Aviation Act of 1958, as amended, 49 U.S.C. §§1301—1557, and by the federal regulations promulgated thereunder, and precluded under the Commerce Clause of the United States Constitution[.]" We conclude that this question must be answered in the negative.

OPINION

The United States Supreme Court acknowledged in *Wardair Canada, Inc. v. Florida Department of Revenue* (1986), 477 U.S. 1, 91 L. Ed. 2d 1, 106 S. Ct. 2369, that Congress had regulated aviation extensively. However, the Court also pointed out that State law is not preempted whenever there is any Federal regulation of an activity or industry. 477 U.S. at 6, 91 L. Ed. 2d at 8, 106 S. Ct. at 2372.

There are three instances where Federal law will be found to preempt State law: (1) where Congress has expressly preempted State law; (2) where congressional intent to preempt may be inferred from the pervasiveness of the Federal regulatory scheme; and (3) when State law conflicts with the Federal law or interferes with the achievement of congressional objectives. (*West v. Northwest Airlines, Inc.* (9th Cir. Sept. 11, 1990), No. 89—35820; *O'Carroll v. American Airlines, Inc.* (5th Cir. 1989), 863 F.2d 11.) In the case before us, defendant contends that plaintiffs' claims are expressly preempted by section 1305. Defendant also contends that section 1305 and its legislative history demonstrate a congressional intent to occupy the entire field and exercise exclusive Federal control over aviation matters. Finally, defendant argues that the commerce clause bars plaintiffs' claims.

I. EXPRESS PREEMPTION

Section 1305(a) provides:

"[N]o State or political subdivision thereof and no inter-state agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes or services of any air carrier ***." 49 U.S.C. §1305(a) (1988).

Defendant argues that all of plaintiffs' claims are directly related to defendant's rates or services and, therefore, are preempted.

Plaintiffs' breach of contract and Consumer Fraud Act claims seek to recover damages for the loss in value of their mileage credits. Plaintiffs also request orders enjoining defendant from applying any subsequent changes in the frequent flyer program to plaintiffs.

■■ Initially we note that private actions for injunctive relief may not be maintained under the Consumer Fraud Act. (*Martin v. Eggert* (1988), 174 Ill. App. 3d 71, 528 N.E.2d 386.) In addition, we find that any attempt to enjoin defendant's application of its new program rules would be an attempt to regulate the services of an airline and thus a violation of section 1305. See *Hingson v. Pacific Southwest Airlines* (9th Cir. 1984), 743 F.2d 1408; *Anderson v. USAIR, Inc.* (D.C. 1985), 619 F. Supp. 1191, *aff'd* (D.C. Cir. 1987), 818 F.2d 49.

■■ However, we also find that plaintiffs' claims for damages for breach of contract and violation of the Consumer Fraud Act are not preempted by section 1305. See *Beineman v. City of Chicago* (7th Cir. 1988), 864 F.2d 463; *Hingson v. Pacific Southwest Airlines* (9th Cir. 1984), 743 F.2d 1408; *In re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975* (2d Cir. 1980), 635 F.2d 67; *Wolst v. American Airlines, Inc.* (N.D. Ill. 1987), 668 F. Supp. 1117; *Anderson v. USAIR, Inc.* (D.C. 1985), 619 F. Supp. 1191; *Brunwasser v. Trans World Airlines, Inc.* (W.D. Pa. 1982), 541 F. Supp. 1338.

In *Anderson* and *Hingson*, blind plaintiffs brought suit alleging that the defendant airlines' policy of excluding blind persons from occupying certain seats on aircraft violated local laws providing equal access for and precluding discrimination against the handicapped. The court of appeals in *Hingson* and the Federal district court in *Anderson* both held that the State laws in question were preempted by section 1305. The courts stated that the term "ser-

vices" as used in section 1305 included the regulation of air carrier seating policies for handicapped persons. *Hingson*, 743 F.2d at 1415-16; *Anderson*, 619 F. Supp. at 1198.

However, the courts in *Hingson* and *Anderson* also found that the blind plaintiffs' common law claims for damages for intentional infliction of emotional distress were not preempted by section 1305. (*Hingson*, 743 F.2d at 1416; *Anderson*, 619 F. Supp. at 1197.) Several other courts have also concluded that common law actions for damages are not preempted by section 1305. See *West v. Northwest Airlines, Inc.* (9th Cir. Sept. 11, 1990), No. 89—35820; *Bieneman v. Chicago*, 864 F.2d at 471; *In re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975*, 635 F.2d at 74; *Holliday v. Bell Helicopters Textron, Inc.* (1990), 747 F. Supp. 1396; *New York v. Trans World Airlines, Inc.* (S.D. N.Y. 1989), 728 F. Supp. 162; *Illinois Corporate Travel, Inc. v. American Airlines, Inc.* (N.D. Ill. 1988), 682 F. Supp. 378, 380 n.1, *aff'd* (7th Cir. 1989), 889 F.2d 751; *Wolst v. American Airlines, Inc.* (N.D. Ill. 1987), 668 F. Supp. at 1119; *Brunwasser v. Trans World Airlines, Inc.* (W.D. Penn. 1982), 541 F. Supp. at 1345; *Stream Aviation, Inc. v. Anders Production, Inc.* (La. App. 1987), 517 So. 2d 1157; *People v. Western Airlines, Inc.* (1984), 155 Cal. App. 3d 597, 202 Cal. Rptr. 237.

■ We are aware that some courts have reached an opposite conclusion. (See *Mattox v. Trans World Airlines, Inc.* (5th Cir. 1990), 897 F.2d 773; *O'Carroll v. American Airlines, Inc.* (5th Cir. 1989), 863 F.2d 11 (both holding that common law claims against an airline were preempted by section 1305).) However, we believe that the better reasoned view is that expressed in *West v. Northwest Airlines, Inc.* There, the Ninth Circuit Court of Appeals stated:

"*[W]e disagree with Northwest and the district court that 'law[s] ... relating to airline services' encompasses all state laws that affect airline services, however tangentially.* This interpretation of §1305(a)(1) would unduly expand preemption and ignore our presumption against federal preemption in this traditional state law area. Instead, we find that Section 1305(a)(1) preempts claims only when the underlying statute or regulation itself relates to airline services, regardless of whether the claim arises from a factual setting involving air services. Thus, *state laws that merely have an effect on airline services are not preempted* (emphasis added)." *West v. Northwest Airlines, Inc.* (9th Cir. Sept. 11, 1990), No. 89—35820.

The claims for damages in the present case arise out of plain-

tiffs' contracts with defendant. The claims bear only a tangential relation to defendant's rates and services and any effect that an award of damages would have on defendant's rates and services would be remote and indirect. (*New York v. Trans World Airlines, Inc.*, 728 F. Supp. at 176; see also *Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 300, 48 L. Ed. 2d 643, 652, 96 S. Ct. 1978, 1985 (holding that any impact on rates that may result from the imposition of common law tort liability or from practices adopted by a carrier to avoid such liability would be incidental); *Beineman v. Chicago*, 864 F.2d at 471 (pointing out that State courts award damages every day in air crash cases notwithstanding the fact the Federal law preempts State regulation of safety in air travel).) Accordingly, we conclude that section 1305 does not expressly preempt plaintiffs' actions for damages for breach of contract and violation of the Consumer Fraud Act.

## II. IMPLIED PREEMPTION

Defendant argues that the extensive regulation of the field of aviation by Congress and the Department of Transportation demonstrates congressional intent to occupy the entire field. Defendant bases its argument on sections 1302(a)(7) and 1381 of the Federal Aviation Act (49 U.S.C. §§1302(a)(7), 1381(1988)) and the provisions of the Civil Aeronautics Board Sunset Act of 1984 (Sunset Act) (Pub. L. No. 98—443, 98 Stat. 1703 (1984)). Defendant argues that these authorities establish that Congress intended that the Department of Transportation have exclusive authority for regulating advertising and preventing deceptive practices by airlines. We disagree.

Section 1302(a)(7) states only that the prevention of unfair, deceptive, predatory, or anticompetitive practices in air transportation shall be considered in the public interest and in accordance with the public convenience. Nothing in its language gives rise to an inference that section 1302(a)(7) was intended to foreclose State damage actions against an airline for engaging in deceptive practices. See *New York v. Trans World Airlines, Inc.*, 728 F. Supp. at 177.

Turning to defendant's argument that section 1381 indicates a congressional intent to preclude State consumer protection claims, we note that a similar argument was rejected by the Supreme Court in *Nader v. Allegheny Airlines*. There, the Court held that section 1381 did not eliminate State court common law or statutory claims against airlines for fraud; rather, the Court ruled that such

claims were preserved by section 1506 of the Federal Aviation Act (49 U.S.C. §1506 (1988)). *Nader*, 426 U.S. at 300, 48 L. Ed. 2d at 652, 96 S. Ct. at 1985.

■■ Section 1506 provides:

"Nothing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." (49 U.S.C. §1506 (1988).)

The Supreme Court found that section 1381 was intended, not to preclude, but to supplement the compensatory common law remedies for private parties preserved under section 1506. *Nader*, 426 U.S. at 300-01, 48 L. Ed. 2d at 653, 96 S. Ct. at 1985.

Defendant contends that the *Nader* decision cannot be considered as controlling because the decision predated the Sunset Act of 1984. Defendant argues that a statement in the legislative history of the Sunset Act, that the Act preempts State regulation of consumer protection and unfair competitive practices, indicates that Congress intended to preempt plaintiffs' claims.[1]

■■ As our earlier discussion points out, an award of damages for breach of contract or violation of the Consumer Fraud Act does not amount to "State regulation." Further, Congress in passing the Sunset Act in 1984 is presumed to have been aware of the Supreme Court's 1976 holding in *Nader* that section 1506 preserved State common law claims for fraud. Thus, Congress' retention of section 1506 following passage of the Sunset Act indicates its tacit approval of the Supreme Court's decision. Accordingly, we find that Congress did not intend the Sunset Act to preempt plaintiffs' State law damage claims.

III. COMMERCE CLAUSE

Defendant argues that the circuit court erred in holding that the commerce clause did not bar plaintiffs' claims. Defendant contends that by seeking an injunction in an Illinois court that will require defendant to provide specific services to its frequent flyer

---

[1]The statements defendant relies on are contained in House. Report 793 (H.R. No. 793, 98th Cong., 2d Sess. 4, *reprinted in* 1984 U.S. Code Cong. & Admin. News 2857, 2860). The House Report provides:

"In addition, to protecting consumers, federal regulation insures a uniform system of regulation and preempts regulation by the states. If there was no Federal regulation, the states might begin to regulate these areas, and the regulations could vary from state to state. This would be confusing and burdensome to airline passengers, as well as to the airlines."

program members nationwide, plaintiffs are attempting to regulate interstate commerce.

In our discussion above, we pointed out that plaintiffs could not maintain a private action for injunctive relief under the Consumer Fraud Act and that any attempt to enjoin defendant's action would constitute improper State regulation of the activities of an airline. In light of the foregoing, defendant's arguments that an injunction would violate the commerce clause are moot.

In conclusion, we find that although plaintiffs' claims for injunctive relief are expressly preempted by section 1305, plaintiffs' common law and statutory damage claims are neither expressly nor implicitly preempted. Accordingly, the order of the circuit court denying defendant's motion to dismiss is affirmed.

Affirmed.

RIZZI and FREEMAN,* JJ., concur.

*Justice Freeman concurred in this opinion prior to his election to the Illinois Supreme Court.