(No. 71418.—

MYRON (MIKE) WOLENS *et al.*, Appellees, v. AMERI-
CAN AIRLINES, INC., Appellant.

*Opinion filed March 12, 1992.*

CLARK and FREEMAN, JJ., took no part.
MILLER, C.J., specially concurring.

Jerold S. Solovy, Marguerite M. Tompkins, Jeffrey T. Shaw and Daniel Lynch, of Jenner & Block, of Chicago, for appellant.

Gilbert W. Gordon and Robert Marks, of Marks, Marks & Kaplan, Ltd., and Michael J. Freed, Michael B. Hyman and Edith F. Canter, of Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., all of Chicago, for appellees Myron (Mike) Wolens *et al.*

Nicholas E. Chimicles, Brenda M. Nelson and Robin Resnick, of Greenfield & Chimicles, of Haverford, Pennsylvania, and Marvin Miller, of Chertow & Miller, of Chicago, for appellee P.S. Tucker.

Todd Smith, of Corboy & Demetrio, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE HEIPLE delivered the opinion of the court:

This issue presented by this appeal stems from an action by plaintiffs against defendant American Airlines concerning benefits accumulated through defendant's frequent flyer program. Following denial of defendant's motion to dismiss, the trial court granted defendant's motion for certification for interlocutory appeal. The ap-

pellate court affirmed the order denying the dismissal. 207 Ill. App. 3d 35.

Plaintiffs are participants in defendant's American Airlines AAdvantage (AAdvantage) frequent flyer program. In 1988 they filed a class action against defendant, alleging that they enrolled in the AAdvantage program pursuant to a national membership campaign by defendant. Once enrolled, plaintiffs received various communications from defendant setting forth the benefits of the program and the mileage credits necessary for receipt of those benefits. Plaintiffs used defendant's airline, and used the facilities of other organizations that participated in the AAdvantage program, including other airlines, hotels, and car rental companies, in order to accumulate mileage credits for use in the program. According to plaintiffs' complaint, the value of those credits was substantially and adversely affected by defendant, who retroactively reduced and restricted the benefits available, effective May 18, 1988.

Plaintiffs charged that defendant's action in retroactively modifying the rules of the AAdvantage program constituted a breach of defendant's contracts with plaintiffs and all others who joined the program prior to May 1988. The complaint also charged that the defendant's action was in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*). Plaintiffs sought money damages and an injunction preventing retroactive application of any changes in the program to mileage credits earned prior to the changes.

Defendant initially removed the action to the United States District Court for the Northern District of Illinois, arguing that the suit raised a Federal question exclusively committed to the adjudication of the Federal courts pursuant to section 1305(a)(1) of the Federal Aviation Act (49 U.S.C. §1305(a)(1) (1988)). The district court

remanded the action to the circuit court, concluding that the complaint raised State law contract and fraud claims, and that such claims are not converted into Federal actions by section 1305 or its legislative history. *Wolens v. American Airlines, Inc.* (N.D. Ill., Oct. 25, 1988), No. 88—C—8158.

On remand, defendant moved to dismiss plaintiffs' action and a second similar class action complaint which was filed following the district court decision and consolidated with the original action. Defendant moved to dismiss on the ground that plaintiffs' claims relate to defendant's rates and services and therefore are expressly preempted by section 1305 of the Federal Aviation Act. Defendant moved to dismiss plaintiffs' Consumer Fraud Act claims on the ground that they are implicitly preempted by Federal regulation. Finally, defendant moved to dismiss plaintiffs' claims in their entirety on the ground that they are barred by the commerce clause because subjecting airlines to State consumer fraud and common law contract claims would impose a burden on interstate commerce.

The circuit court denied defendant's motion to dismiss on March 20, 1989, finding that section 1305 did not preempt plaintiffs' claims. On March 23, 1989, the circuit court granted defendant's motion for certification of the following question for interlocutory review pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308):

> "Whether plaintiffs' claims are preempted by the Federal Aviation Act of 1958, as amended, 49 U.S.C. §§1301—1557, and by the federal regulations promulgated thereunder, and precluded under the Commerce Clause of the United States Constitution?"

The appellate court answered the question in the negative, and affirmed the decision of the trial court with respect to plaintiffs' breach of contract and Consumer Fraud Act claims, holding that their damage claims are

not preempted by section 1305. The court concluded, however, that the attempt to enjoin defendant's application of its new AAdvantage program rules would be an attempt to regulate the services of an airline and thus a violation of section 1305. The appellate court issued a certificate of importance to permit immediate review by this court, and this court assumes jurisdiction pursuant to article VI, section 4(c), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, §4(c)), and Supreme Court Rule 316 (134 Ill. 2d R. 316). We affirm.

Section 1305(a) provides in part:

> "[N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier ***." (49 U.S.C. §1305(a)(1) (1988).)

Plaintiffs request injunctive relief to halt application of defendant's new AAdvantage program rules. As the appellate court correctly concluded, injunctive relief would involve the regulation of defendant's services and therefore violate section 1305. See *Hingson v. Pacific Southwest Airlines* (9th Cir. 1984), 743 F.2d 1408.

Plaintiffs' claims for damages for breach of contract and violation of the Consumer Fraud Act, however, survive. We adopt the prevailing view, set forth in *West v. Northwest Airlines, Inc.* (9th Cir. 1990), 923 F.2d 657, that "section 1305(a)(1) preempts claims only when the underlying statute or regulation itself relates to airline services, regardless of whether the claim arises from a factual setting involving airline services." (923 F.2d at 660. See also *Bieneman v. City of Chicago* (7th Cir. 1988), 864 F.2d 463.) The instant claims bear only a tangential relation to defendant's rates and services and are not expressly preempted.

Defendant also contends that plaintiffs' claims are implicitly preempted under section 1302(a)(7) of the Federal Aviation Act, which states that the prevention of unfair, deceptive, predatory, or anticompetitive practices in air transportation shall be considered in the public interest and in accordance with the public convenience. Proof of implied preemption requires defendant to demonstrate that Congress intended to occupy the field and give Federal law exclusive authority. (*West v. Northwest Airlines, Inc.*, 923 F.2d at 661.) Nothing in the language of section 1302(a)(7) indicates an intent to foreclose State damage claims against an airline for engaging in deceptive practices. *New York v. Trans World Airlines* (S.D.N.Y. 1989), 738 F. Supp. 162.

Additionally, section 1506 of the Federal Aviation Act provides:

"Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." (49 U.S.C. app. §1506 (1988).)

This language indicates that Congress did not intend to occupy the field, but rather that common law remedies were intended to survive. (*Bieneman v. City of Chicago*, 864 F.2d at 471; *West v. Northwest Airlines, Inc.*, 923 F.2d at 661.) Plaintiffs' claims are not implicitly preempted.

Finally, defendant argues that plaintiffs' claims are barred by the commerce clause. Injunctive relief, defendant contends, will result in State regulation of interstate commerce. In light of our conclusion that an attempt to enjoin defendant's actions regarding the AAdvantage program would constitute improper State regulation preempted by section 1305, further discussion of defendant's commerce clause argument is unnecessary.

Federal and State courts have repeatedly refused to interpret the Federal Aviation Act so as to preempt all State laws. Courts have carefully and narrowly construed the applicable law so as to preempt only those State laws and regulations that specifically relate to and have more than a tangential connection with an airline's rates, routes or services. These courts have recognized that Congress did not intend section 1305 to be construed as a blanket preemption provision, and we join in this conclusion. While plaintiffs' claims for injunctive relief are expressly preempted by the language of section 1305, their damage claims for breach of contract and violation of the Consumer Fraud Act survive.

Accordingly, the circuit and appellate court decisions are affirmed.

*Judgments affirmed.*

JUSTICES CLARK and FREEMAN took no part in the consideration or decision of this case.

CHIEF JUSTICE MILLER, specially concurring:

The majority concludes that section 1305(a)(1) of the Federal Aviation Act (49 U.S.C. §1305(a)(1) (1988)) does not expressly preempt the plaintiffs' State-law-based claims for damages. As the sole support for this holding, the majority opinion asserts that the Federal statute preempts only State laws that are specifically directed at the airline industry and does not affect laws of general application, like those at issue here. Although I agree with the majority's conclusion, I cannot subscribe to its rationale.

Unlike the majority, I am not persuaded that Federal preemption exclusively turns on a determination of whether the State law at issue is general or specific in its focus and operation. Although State laws specifically addressing activity that is the subject of an express pre-

emption provision will be preempted (see *Mackey v. Lanier Collections Agency & Service, Inc.* (1988), 486 U.S. 825, 829-30, 100 L. Ed. 2d 836, 843-44, 108 S. Ct. 2182, 2185), not every State law having general application is automatically saved from preemption. Indeed, one apparent and unsustainable consequence of the majority's reasoning would be to shield from preemption all common law actions and remedies, which by their nature have general application. The general nature of a State law can be a circumstance arguing against preemption, but that characteristic alone will not be determinative. See *Ingersoll-Rand Co. v. McClendon* (1990), 498 U.S. 133, 139, 112 L. Ed. 2d 474, 484, 111 S. Ct. 478, 483.

One need not look far to find, in this or other contexts, Federal preemption of State or other local laws having general application. For example, statutes or common law remedies, even though not aimed directly or entirely at airlines, may not be used to control the seating of aircraft passengers. (See *O'Carroll v. American Airlines, Inc.* (5th Cir. 1989), 863 F.2d 11; *Anderson v. USAir, Inc.* (D.C. Cir. 1987), 818 F.2d 49; *Hingson v. Pacific Southwest Airlines* (9th Cir. 1984), 743 F.2d 1408; *Hastalis v. Human Rights Comm'n* (1990), 205 Ill. App. 3d 50.) These cases surely demonstrate that not every law of general application will survive Federal preemption, and thus the majority's proffered distinction between laws of general application and laws of specific application fails to provide a reliable guide for resolving preemption questions. If this distinction is useful at all, it is only because a law's general application supplies a necessary, though not a sufficient, predicate for a finding of no preemption.

Federal preemption of State laws may occur in three ways. First, State law may be expressly preempted, by an explicit Congressional statement to that effect. (*Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 95, 77 L.

Ed. 2d 490, 500, 103 S. Ct. 2890, 2899.) Second, State law may be implicitly preempted, as when Congress has occupied a field so extensively that any State regulation would be inconsistent with the comprehensive Federal scheme. (*Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1152.) Third, State law will be preempted when it actually conflicts with Federal law. A conflict will be found when compliance with both Federal and State provisions is impossible (*Florida Lime & Avocado Growers, Inc. v. Paul* (1963), 373 U.S. 132, 142-43, 10 L. Ed. 2d 248, 257, 83 S. Ct. 1210, 1217), or when the State law stands as an obstacle to the full accomplishment of the Federal purpose (*Hines v. Davidowitz* (1941), 312 U.S. 52, 67, 85 L. Ed. 581, 587, 61 S. Ct. 399, 404). Determining whether State law is preempted by Federal law is solely a question of Congressional intent. (*California Federal Savings & Loan Association v. Guerra* (1987), 479 U.S. 272, 280, 93 L. Ed. 2d 613, 623, 107 S. Ct. 683, 689.) In this regard, we may consider the presumption against preemption in areas of law traditionally regulated by the States. (*Metropolitan Life Insurance Co. v. Massachusetts* (1985), 471 U.S. 724, 740, 85 L. Ed. 2d 728, 740-41, 105 S. Ct. 2380, 2389; *Federal Express Corp. v. California Public Utilities Comm'n* (9th Cir. 1991), 936 F.2d 1075, 1078; *West v. Northwest Airlines, Inc.* (9th Cir. 1990), 923 F.2d 657, 659.) "But when Congress has 'unmistakably ... ordained' [citation] that its enactments alone are to regulate a part of commerce, state laws regulating that aspect of commerce must fall." *Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 525, 51 L. Ed. 2d 604, 614, 97 S. Ct. 1305, 1309.

The Federal Aviation Act contains an express preemption provision, and the principal question before us is whether the challenged State laws and remedies at issue

here fall within its scope. Section 1305(a)(1) of the Act provides, in pertinent part:

> "[N]o State or political subdivision thereof *** shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier ***." (49 U.S.C. §1305(a)(1) (1988).)

As construed by the courts, section 1305(a)(1) does not preempt every State-law-based claim affecting airlines and their operations. See *Air Transport Association of America v. Public Utilities Comm'n* (9th Cir. 1987), 833 F.2d 200, 207; see also *Federal Express Corp. v. California Public Utilities Comm'n* (9th Cir. 1991), 936 F.2d 1075, 1078 ("[D]espite the very broad and apparently all-inclusive language of [section 1305(a)(1)], common sense and common practice have forbidden that the statute be taken literally and have restricted its range").

The preemption provision was enacted as part of the Airline Deregulation Act of 1978 (Pub. L. 95—504, 92 Stat. 1708 (1978)) and later codified as section 1305 of the Federal Aviation Act. In the Airline Deregulation Act, Congress significantly altered the dynamics of the airline industry by substantially reducing, though not completely eliminating, the Federal regulatory apparatus that had previously limited competition among air carriers. It seems clear, then, that a primary purpose of the preemption provision contained in the 1978 amendatory act was to prevent the States from attempting to re-regulate air carriers, by imposing their own potentially conflicting requirements, after Congress had deregulated the airline industry. (*New England Legal Foundation v. Massachusetts Port Authority* (1st Cir. 1989), 883 F.2d 157, 173; Freeman, *State Regulation of Airlines and the Airline Deregulation Act of 1978*, 44 J. Air L. & Com. 747, 755-56 (1979).) This is not to suggest that the range of State activity preempted by section 1305(a)(1) is nec-

essarily coextensive with the regulatory apparatus dismantled in 1978. But Congress, having decided to exit the business of regulating air carriers' rates, routes, and services, surely wanted to forbid the States to attempt to fill that regulatory vacuum, and I would construe the preemption provision in that light.

If the principal objective of section 1305(a)(1) is to bar State economic regulation of air carriers (*Federal Express Corp. v. California Public Utilities Comm'n* (9th Cir. 1991), 936 F.2d 1075, 1078-79), then it must be concluded that the claims raised here fall outside the intended reach of that provision. The plaintiffs allege breach of contract and violations of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1989, ch. 121½, pars. 261 through 272). By their complaints, the plaintiffs seek to enforce certain State-law-based statutory and common law rights. These claims are not regulatory in force or effect. They do not establish the rates airlines must charge, or determine the routes airlines must fly, or dictate the services airlines must provide. The plaintiffs' claims do not threaten the defendant airline with economic regulation, which Congress intended to prevent the States from imposing on a deregulated airline industry. The plaintiffs seek only to enforce their statutory and common law remedies for the defendant airline's alleged breach of its self-imposed obligations. For these reasons, I would conclude that the plaintiffs' damage claims are not expressly preempted by section 1305(a)(1) of the Federal Aviation Act.

One further consideration that counsels against an overly expansive reading of the preemption provision is found in the savings clause of section 1506 of the Federal Aviation Act. Section 1506 provides:

"Nothing in this chapter shall in any way abridge or alter the remedies now existing at common law or by

statute, but the provisions of this chapter are in addition to such remedies." (49 U.S.C. §1506 (1988).)

The savings clause was part of the Federal Aviation Act prior to 1978, and the clause was retained by Congress notwithstanding the adoption of the preemption provision contained in the Airline Deregulation Act. As the majority opinion correctly concludes, the savings clause preserves, against implied preemption, State-law claims that are not specifically preempted by section 1305(a)(1). (*Trans World Airlines, Inc. v. Mattox* (5th Cir. 1990), 897 F.2d 773, 783, *appeal after remand* (1991), 949 F.2d 141, *cert. granted* (1991), 498 U.S. 926, 116 L. Ed. 2d 601, 112 S. Ct. 632; *Illinois Corporate Travel, Inc. v. American Airlines, Inc.* (7th Cir. 1989), 889 F.2d 751, 754.) By retaining the savings clause at the same time it added the preemption provision, Congress apparently believed that some statutory and common law remedies (see, *e.g., Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 48 L. Ed. 2d 643, 96 S. Ct. 1978; *Brunswasser v. Trans World Airlines, Inc.* (W.D. Pa. 1982), 541 F. Supp. 1338) would in fact survive the enactment of section 1305(a)(1).

As a final matter, I question the majority's conclusion that the plaintiffs' requests for injunctive relief are preempted even though their claims for money damages are not. The majority applies the same distinction adopted by the appellate court in the present case (207 Ill. App. 3d 35, 39). It is not clear, however, that the two forms of relief are so readily distinguishable for preemption purposes. (See *International Paper Co. v. Ouellette* (1987), 479 U.S. 481, 498 n.19, 93 L. Ed. 2d 883, 901 n.19, 107 S. Ct. 805, 815 n.19.) In any event, in the absence of a finding that the plaintiffs properly allege claims for which injunctive relief may be awarded, I believe it is premature to attempt to determine in this interlocutory appeal whether that form of relief would be preempted

by Federal law. The question whether the plaintiffs may obtain injunctive relief under the Consumer Fraud and Deceptive Business Practices Act has not been raised in this court and thus is not before us. If, as the appellate court concluded, private actions for injunctive relief are not available under the Act (207 Ill. App. 3d at 39), we would have no occasion to consider in this case the preemptive effect of section 1305(a)(1) on that portion of the plaintiffs' action.

For the reasons stated, I concur in the court's judgment.