(No. 71418.—

MYRON (MIKE) WOLENS *et al.*, Appellees, v. AMERI-CAN AIRLINES, INC., Appellant.

*Opinion filed December 16, 1993.*

FREEMAN, J., took no part.
McMORROW, J., dissenting.

Jerold S. Solovy, Marguerite M. Tompkins and Daniel Lynch, of Jenner & Block, of Chicago, for appellant.

Gilbert W. Gordon and Robert Marks, of Marks, Marks & Kaplan, Ltd., Michael J. Freed, Michael B. Hyman and Edith F. Canter, of Much, Shelist, Freed, Denenberg & Ament, P.C., Marvin Miller, of Miller, Faucher, Chertow, Cafferty & Wesler, all of Chicago, and Nicholas E. Chimicles, Brenda M. Nelson and Robin Resnick, of Greenfield & Chimicles, of Haverford, Pennsylvania, for appellees.

JUSTICE BILANDIC delivered the opinion of the court:

This cause comes to us on remand from the United States Supreme Court for further consideration in light of the decision in *Morales v. Trans World Airlines, Inc.* (1992), 504 U.S. 374, 119 L. Ed. 2d 157, 112 S. Ct. 2031.

In 1988, plaintiffs filed a class action in the circuit court of Cook County on behalf of participants in American's "AAdvantage" frequent flyer program. Under the program, American awards mileage credits to participating frequent flyers who receive free or discounted flights and other travel benefits based upon their accumulated mileage credits. The complaint alleged that American's

retroactive modification of the rules of the AAdvantage program constituted a breach of contract with plaintiffs and all others who joined the program prior to May 1988, and violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*). Plaintiffs sought money damages and an injunction preventing retroactive application to mileage credits earned prior to the changes.

The trial court denied defendant's motion to dismiss, finding that section 1305 did not preempt plaintiffs' claims; however, the trial court granted American's motion for certification for interlocutory review pursuant to our Rule 308 (134 Ill. 2d R. 308). The appellate court concluded that plaintiffs' attempt to enjoin American's application of its new AAdvantage program rules would constitute an attempt to regulate the service of an airline and was therefore preempted. (*Wolens v. American Airlines* (1990), 207 Ill. App. 3d 35, 39.) The court found, however, that plaintiffs' damage claims were not barred by section 1305 of the Deregulation Act. *Wolens*, 207 Ill. App. 3d at 39.

The appellate court issued a certificate of importance to permit immediate review by this court pursuant to our Rule 316 (134 Ill. 2d R. 316). This court affirmed the conclusion of the appellate court that plaintiffs' claim for injunctive relief was preempted by section 1305(a)(1) of the Deregulation Act. (*Wolens v. American Airlines, Inc.* (1992), 147 Ill. 2d 367.) Plaintiffs' claim for damages for breach of contract and violation of the Consumer Fraud Act survived, however. Plaintiffs' claim for money damages had only a tangential relation to defendant's rates and services; thus, this court found that the claim was not preempted under section 1305(a)(1).

Following this court's issuance of its opinion in *Wolens*, only American petitioned the United States Su-

preme Court for a writ of *certiorari.* The Court vacated the judgment of this court, and remanded this cause for further consideration in light of *Morales.* (*American Airlines, Inc. v. Wolens* (1992), 504 U.S. 374, 121 L. Ed. 2d 6, 113 S. Ct. 32.) We find this court's decision addressing plaintiffs' claim for injunctive relief is consistent with the *Morales* ruling; thus, we do not disturb that portion of this court's previous opinion. Therefore, the only issue before this court is whether plaintiffs' claim for money damages for breach of contract and violation of the Consumer Fraud Act is preempted by section 1305(a)(1) of the Deregulation Act.

I

We begin our analysis with a review of the *Morales* decision. In *Morales,* the Supreme Court considered whether section 1305(a)(1) preempted the enforcement of State statutes regulating airline fare advertising based upon guidelines promulgated by the National Association of Attorneys General, which included the Illinois Attorney General.

Section 1305(a)(1) provides in pertinent part:

"[N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier ***." 49 U.S.C. §1305(a)(1) (1988).

The *Morales* court noted that the ordinary meaning of the phrase "relating to" is a broad one, that is, " 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.' " (*Morales,* 504 U.S. at 383, 119 L. Ed. 2d at 167, 112 S. Ct. at 2037, quoting Black's Law Dictionary 1158 (5th ed. 1979).) The Court compared the language in the Deregulation Act to a similarly

worded preemption provision found in the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. §1144(a) (1988)), which preempts all State laws " 'insofar as they ... relate to any employee benefit plan.' " (*Morales,* 504 U.S. at 383, 119 L. Ed. 2d at 167, 112 S. Ct. at 2037, quoting 29 U.S.C. §1144(a) (1988).) Adopting the same interpretation employed in the ERISA actions, the Court held that State enforcement actions having a *"connection with or reference to* airline 'rates, routes, or services' are pre-empted under [section] 1305(a)(1)." (Emphasis added.) *Morales,* 504 U.S. at 384, 119 L. Ed. 2d at 167-68, 112 S. Ct. at 2037.

While the Court concluded that fare guidelines are preempted under section 1305(a)(1), it nonetheless held that, in spite of such a broad interpretation of the "relates to" language, all State laws would not be preempted. As stated in *Morales*:

> "In concluding that the *** fare advertising guidelines are pre-empted, we do not *** set out on a road that leads to pre-emption of state laws against gambling and prostitution as applied to airlines. Nor need we address whether state regulation of the nonprice aspects of fare advertising (for example, state laws preventing obscene depictions) would similarly 'relat[e] to' rates; the connection would obviously be far more tenuous. To adapt to this case our language in *Shaw,* '[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have preemptive effect." *Morales,* 504 U.S. at 390, 119 L. Ed. 2d at 171-72, 112 S. Ct. at 2040, quoting *Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 100 n.21, 77 L. Ed. 2d 490, 503 n.21, 103 S. Ct. 2890, 2901 n.21.

The *Morales* Court found the fare guidelines at issue did not present a borderline question; as such, the Court expressed no view " 'about where it would be appropriate to draw the line' " as to the types of

actions that would be preempted by section 1305(a)(1). (*Morales,* 504 U.S. at 390, 119 L. Ed. 2d at 172, 112 S. Ct. at 2040, quoting *Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 100 n.21, 77 L. Ed. 2d 490, 503 n.21, 103 S. Ct. 2890, 2901 n.21.) Moreover, the Court noted, the decision "does not give the airlines *carte blanche* to lie to and to deceive consumers; the [Department of Transportation] retains the power to prohibit advertisements which in its opinion do not further competitive pricing." *Morales,* 504 U.S. at 390-91, 119 L. Ed. 2d at 172, 112 S. Ct. at 2040. See also 49 U.S.C. app. §1381 (1988) (granting the Department of Transportation authority to investigate unfair trade practices in the airline industry).

The *Morales* Court concluded that the guidelines regarding airline fare advertising were expressly preempted by section 1305(a)(1). The Court found that the obligations imposed by the guidelines would have a significant impact upon the airlines' ability to market their product, and hence a significant impact upon the fares charged. (*Morales,* 504 U.S. at 389, 119 L. Ed. 2d at 171, 112 S. Ct. at 2040.) Thus, since the guidelines related directly to airline rates, the Attorneys General were precluded from enforcing the guidelines against the airlines.

## II

*Morales* instructs that, in order to determine whether the plaintiffs' claims for breach of contract and violation of the Consumer Fraud Act are preempted, we must decide whether those claims have a "connection with or reference to airline 'rates, routes, or services.'" (*Morales,* 504 U.S. at 384, 119 L. Ed. 2d at 167-68, 112 S. Ct. at 2037, quoting 49 U.S.C. app. §1305(a) (1988).) As noted, however, the *Morales* Court expressly stated that certain State actions may

be too tenuously or remotely related to an airline's rates, routes, or services to have a preemptive effect. (*Morales*, 504 U.S. at 390, 119 L. Ed. 2d at 172, 112 S. Ct. at 2040.) It appears, therefore, that the *Morales* Court intended to leave open the possibility that certain State law actions that had only a slight connection to an airline's rates, routes, or services would not be preempted by section 1305(a)(1).

In their complaint, plaintiffs contend that the AAdvantage frequent flyer program was developed as a marketing device for the purpose of encouraging greater use of airline facilities by the general public and, more particularly, by frequent travelers. Prior to May 18, 1988, plaintiffs were entitled to redeem their AAdvantage award certificates for free air travel on any available date to applicable destinations for any available seat in the class of service provided. After that time, American retroactively altered the terms of its contract with the AAdvantage program members by instituting various restrictions on previously earned AAdvantage credits. Plaintiffs do not challenge American's right to alter or restrict aspects of the AAdvantage program prospectively; however, they contend that American never reserved the right to make such changes retroactive so as to diminish the value of previously earned AAdvantage credits.

Pursuant to *Morales*, we find that the claims at issue do not relate to the rates, routes, or services of an airline. A frequent flyer program is not an essential element to the operation of an airline. Indeed, the airline industry functioned successfully for decades prior to providing incentives to its travelers in the form of frequent flyer programs. As noted in Chief Justice Miller's special concurrence to our previous opinion, plaintiffs' claims do not seek to "establish the rates airlines must charge, or determine the routes airlines

must fly, or dictate the services airlines must provide." (*Wolens*, 147 Ill. 2d at 377.) Instead, the plaintiffs here seek only money damages for breach of contract and violation of the Consumer Fraud Act after American implemented retroactive changes to the terms of its frequent flyer program.

When a member earns frequent flyer miles by flying on American or by doing business with American affiliates, a contractual relationship is formed which vests the frequent flyer with the right to earn specific travel awards. American chose to retroactively alter the terms of the frequent flyer program. This action constituted a breach of contract which entitled plaintiffs to pursue an available remedy. 12A Ill. L. & Prac. *Contracts* §391 (1983).

Accordingly, we conclude that our previous holding, that plaintiffs' claim for money damages was not preempted because it bears only a tangential relation to airline rates, routes, and services, comports with the *Morales* decision. As defined, the word "tangential" is described as: "touching lightly or in the most *tenuous* way: Incidental." (Emphasis added.) (Webster's Third New International Dictionary 2337 (1986).) In view of our finding that frequent flyer programs are peripheral to the operation of an airline, it follows that plaintiffs' State law claims for money damages bear only a tangential, or tenuous, relation to American's rates, routes, and services.

For the foregoing reasons, we find that plaintiffs' claims for breach of contract and violation of the Consumer Fraud Act are not preempted by section 1305(a)(1) of the Deregulation Act. The claims are excluded by the exception carved out in *Morales* for actions only tenuously connected to the airlines' rates, routes, and services. Therefore, the judgment of the appellate court affirming the circuit court's denial of Amer-

ican's motion to dismiss under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) is affirmed.

*Appellate court affirmed.*

JUSTICE FREEMAN took no part in the consideration or decision of this case.

JUSTICE McMORROW, dissenting:

I respectfully dissent because, in my view, under the reasoning and holding of the *Morales* case, plaintiffs' claims for damages under the Consumer Fraud Act and for breach of contract are preempted by section 1305(a)(1) of the Airline Deregulation Act.

## I

In 1987 and 1988, the National Association of Attorneys General (NAAG) drafted detailed standards governing the advertising and marketing practices of the airline industry. The purpose of the guidelines, according to the NAAG, was to "explain in detail how existing state laws apply to air fare advertising and frequent flyer programs." (*Morales*, 504 U.S. at 392, 119 L. Ed. 2d at 173, 112 S. Ct. at 2041 (appendix, NAAG Guidelines, Introduction (1988)).) Notwithstanding objections to the guidelines, on preemption and policy grounds, by the Department of Transportation and by the Federal Trade Commission, seven members of the NAAG sent memoranda to the airlines stating that the practice of not disclosing all surcharges in airline fare advertisements was a violation of the members' respective State laws on deceptive advertising and trade practices. Some months later, the Texas Attorney General's office sent the airlines notice of its intent to sue under Texas' statute prohibiting deceptive advertising and trade practices for the airlines' failure to disclose all surcharges in their adver-

tisements. The airlines filed suit in the district court seeking declaratory judgment and injunctive relief from any action by Texas in conjunction with the NAAG guidelines on the basis that section 1305(a)(1) expressly preempted actions to enforce State deceptive advertising laws.

As noted by the majority, in analyzing the language of section 1305 prohibiting the States from enacting or enforcing "any law relating to the rates, routes, or services of any air carrier," the *Morales* Court imparted a broad definition to the phrase "relating to." The *Morales* Court additionally observed that ERISA's similarly worded preemption provision (29 U.S.C. §1144(a) (1988)) had repeatedly been recognized as having a " 'broad scope' " and an " 'expansive sweep' " and being " 'conspicuous for its breadth' " (*Morales*, 504 U.S. at 384, 119 L. Ed. 2d at 167, 112 S. Ct. at 2037, quoting *Metropolitan Life Insurance Co. v. Massachusetts* (1985), 471 U.S. 724, 739, 85 L. Ed. 2d 728, 739-40, 105 S. Ct. 2380, 2388-89; *Pilot Life Insurance Co. v. Dedeaux* (1987), 481 U.S. 41, 47, 95 L. Ed. 2d 39, 48, 107 S. Ct. 1549, 1553; *FMC Corp. v. Holliday* (1990), 498 U.S. 52, 58, 112 L. Ed. 2d 356, 364, 111 S. Ct. 403, 407), and that it has been held that a State law " 'relates to' " an employee benefit plan and is preempted by ERISA " 'if it has a connection with or reference to such a plan.' " (*Morales*, 504 U.S. at 384, 119 L. Ed. 2d at 167, 112 S. Ct. at 2037, quoting *Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 95, 97, 77 L. Ed. 2d 490, 501, 103 S. Ct. 2890, 2900.) The *Morales* Court determined that because the relevant language of section 1305(a)(1) of the Deregulation Act is identical to the preemption clause in ERISA, it should be given the same broad interpretation. The *Morales* Court thus held that State enforcement actions having a connection with or reference to airline rates, routes, or services are preempted under

section 1305(a)(1). *Morales*, 504 U.S. at 384, 119 L. Ed. 2d at 167-68, 112 S. Ct. at 2037.

The Court rejected the argument that its ruling should be limited to State laws expressly addressing the airline industry (the position taken by this court in the original *Wolens* opinion), reasoning that such a limitation would create "an utterly irrational loophole *** [which] ignores the sweep of the 'relating to' language." (*Morales*, 504 U.S. at 386, 119 L. Ed. 2d at 169, 112 S. Ct. at 2038.) The Court noted that it had consistently rejected the same argument in ERISA cases, having held that " '[a] state law may "relate to" a benefit plan, and thereby be pre-empted even if the law is not specifically designed to affect such plans, or the effect is only indirect.' " *Morales*, 504 U.S. at 386, 119 L. Ed. 2d at 169, 112 S. Ct. at 2038, quoting *Ingersoll-Rand Co. v. McClendon* (1990), 498 U.S. 133, 139, 112 L. Ed. 2d 474, 484, 111 S. Ct. 478, 483.

The *Morales* Court also rejected a contention essentially the same as that made by Justice Miller in his special concurrence to this court's previous opinion and now adopted by the majority, that plaintiffs' claims are not preempted because they do not seek to " 'establish the rates airlines must charge, or determine the routes airlines must fly, or dictate the services airlines must provide.' " (157 Ill. 2d at 472-73, quoting *Wolens*, 147 Ill. 2d at 377.) The *Morales* Court observed that the argument that section 1305(a)(1) only preempts the States from actually prescribing rates, routes, or services "simply reads the words 'relating to' out of the statute. Had the statute been designed to pre-empt state law in such a limited fashion, it would have forbidden the States to '*regulate* rates, routes, and services.' " (Emphasis in original.) *Morales*, 504 U.S. at 385, 119 L. Ed. 2d at 168, 112 S. Ct. at 2037.

The Court then examined the NAAG guidelines on fare advertising and concluded that they "quite obviously" related to fares. In addition to requiring that all restrictions and surcharges be disclosed clearly and conspicuously, the guidelines also mandated that an advertised fare be available in sufficient quantities to meet reasonably foreseeable demand on every flight on every day in every market in which the fare is advertised or that the advertisement prominently state the extent of the unavailability. The Court found that each guideline bore a reference to air fares, and that under the Texas statute "violations of these requirements would give consumers a cause of action (for at least actual damages [citation]) for an airline's failure to provide a particular advertised fare—effectively creating an enforceable right to that fare when the advertisement fails to include the mandated explanations and disclaimers." (*Morales,* 504 U.S. at 388, 119 L. Ed. 2d at 170, 112 S. Ct. at 2039.) Continuing, the *Morales* Court compared the case before it to *Pilot Life Insurance Co.,* 481 U.S. 41, 95 L. Ed. 2d 39, 107 S. Ct. 1549, which "held that a common-law tort and contract action seeking damages for the failure of an employee benefit plan to pay benefits 'relate[d] to' employee benefit plans and was preempted by ERISA." (*Morales,* 504 U.S. at 388, 119 L. Ed. 2d at 170, 112 S. Ct. at 2039.) Beyond the guidelines' express reference to fares, the *Morales* Court found that the obligations imposed by the guidelines "would have a significant impact upon the airlines' ability to market their product, and hence a significant impact upon the fares they charge." *Morales,* 504 U.S. at 390, 119 L. Ed. 2d at 171, 112 S. Ct. at 2040.

Although the *Morales* Court held that the NAAG guidelines were preempted by section 1305(a)(1), the Court pointed out that the Department of Transportation retains the power to prohibit deceptive advertising

practices. (*Morales*, 504 U.S. at 390, 119 L. Ed. 2d at 172, 112 S. Ct. at 2040.) Under section 411 of the Federal Aviation Act (49 U.S.C. app. §1381 (1988)), the Department has the authority to investigate and determine whether any air carrier is or has been engaged in unfair or deceptive practices and to order the air carrier to cease and desist from such practices.

## ⸺ II

In the instant case, plaintiffs' complaints consist of two separate claims, one under the Consumer Fraud Act and one for breach of contract. Illinois' Consumer Fraud Act makes unlawful "unfair or deceptive acts or deceptive practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact \*\*\* in the conduct of any trade or commerce." (Ill. Rev. Stat. 1987, ch. 121½, par. 262.) The Act authorizes the Attorney General or a State's Attorney to bring an action to restrain by injunction the unfair act or practice, and to seek civil penalties against any person found by the court to have engaged in an unlawful act or practice. (Ill. Rev. Stat. 1987, ch. 121½, par. 267.) Like the Texas consumer protection statute sought to be enforced in *Morales*, the Illinois Consumer Fraud Act also allows individuals to bring actions for damages for violations of its provisions. Ill. Rev. Stat. 1987, ch. 121½, par. 270(a).

Plaintiffs' consumer fraud claims sought an injunction and both actual and punitive damages. In their complaints plaintiffs allege that American solicited the use of its airline by "featuring" its AAdvantage program in mailings and in the distribution of promotional materials which contained a delineation of the mileage credits re-

quired to obtain specific benefits, and that through these materials American induced persons to join the AAdvantage program. Plaintiffs further allege that they were induced by American's solicitations and promises to believe that by accumulating mileage credits they would receive correspondingly greater travel benefits. Plaintiffs allege that American offered these inducements even though it knew that it would change the terms of the program and institute capacity control restrictions which would have the effect of substantially reducing the value of accumulated mileage credits, and that American never advised plaintiffs that it believed it had reserved the right to retroactively restrict or otherwise reduce or alter the benefits available under the program.

When reduced to their simplest terms, plaintiffs' claims for damages, including punitive damages, under the Consumer Fraud Act are based upon allegations of American's deceptive advertising, promotions, and inducements relating to airline fares (*i.e.*, payment of travel fares with mileage credits and upgrades in seating class) and services (*i.e.*, the quantity of seats and flights and the dates of travel to various destinations) which would be available to persons who joined and participated in the AAdvantage program.

Plaintiffs' allegations virtually mirror the restrictions regarding the advertising of frequent flyer benefits and the institution of capacity controls and other frequent flyer program modifications without advance notice which were proposed in the NAAG guidelines on frequent flyer programs. (*Morales*, 504 U.S. at 391, 119 L. Ed. 2d at 173, 112 S. Ct. at 2041 (appendix, NAAG Guidelines).) Although *Morales* involved those of the guidelines relating to advertisements of discounted fares rather than of frequent flyer program benefits, as in *Morales*, plaintiffs in the case at bar seek an adjudication that American's advertising of and representations con-

cerning frequent flyer fares and services constituted unfair and deceptive practices, in violation of State law. *Morales* held that actions seeking to enforce state consumer protection statutes referring and relating to fares and services are expressly preempted by section 1305(a)(1). *Cf. Hastalis v. Human Rights Comm'n* (1990), 205 Ill. App. 3d 50 (plaintiff's discrimination complaint under the Illinois Human Rights Act related to services of the airline and was preempted by section 1305(a)(1)).

Applying *Morales'* expansive and sweeping interpretation of the phrase "relating to," I believe that plaintiffs' claims for compensatory and punitive damages based on allegations of common law breach of contract are likewise preempted by section 1305(a)(1). Plaintiffs allege that prior to May 1988, AAdvantage members, numbering approximately four million persons, were entitled to redeem their award certificates for free air travel on any available date to applicable destinations for any available seat in the class of service provided. Although plaintiffs maintain that they are not attempting to mandate enforcement of the pre-May 1988 terms of the AAdvantage program, in order to prevail on their breach of contract claims plaintiffs must obtain a State-court adjudication that American is contractually obligated to continue to redeem mileage credits earned prior to May 1988 for the same free fares and unrestricted seating and flight services which the AAdvantage program provided up until that time. Such a finding is necessary whether plaintiffs seek to enforce the terms and conditions of the program or an award of money damages for American's alleged breach of those contractual obligations.

I find it significant that the *Morales* Court several times cited to the decision in *Pilot Life Insurance Co.*, 481 U.S. 41, 95 L. Ed. 2d 39, 107 S. Ct. 1549. In that case, the plaintiff brought suit seeking damages for common law

tort and breach of contract based upon the insurance company's improper processing of his claim for and failure to pay disability benefits on the group insurance policy purchased with matching funds of the employer and employees. The Court held that the common law causes of action raised in the plaintiff's complaint "undoubtedly meet the criteria for preemption" under the "relating to" language in ERISA's preemption clause. This court reached the same conclusion in *Arnold v. Babock & Wilcox Co.* (1988), 123 Ill. 2d 67. In *Wilcox,* the plaintiffs' employer sold the plant where they worked and the plant subsequently closed. Plaintiffs filed an action for breach of contract to recover severance benefits to which they claimed entitlement under the terms of their employment contract. The complaint also alleged that the failure to pay the benefits constituted a violation of the State statute governing the payment of wages. The court held that the plaintiffs' State-law causes of action based on breach of contract and violation of the State wage payment law came within the broad scope of ERISA's preemption of any and all laws which relate to an employee benefit plan. *Wilcox,* 123 Ill. 2d at 72-73

*Morales* makes clear that the "relating to" language in section 1305(a)(1) is as expansive in its scope as the identical language in ERISA. Several decisions rendered after *Morales* have applied that broad interpretation in cases against airlines. In *Statland v. American Airlines* (7th Cir. July 16, 1993), No. 92—2062, plaintiff bought a ticket which carried a 10% cancellation penalty. When she cancelled the ticket, American retained 10% of the tax she paid in addition to 10% of the ticket price. Plaintiff filed a class action suit that included four State-law claims alleging breach of fiduciary duty, violations of the Consumer Fraud Act, conversion and breach of contract, based upon the airline's alleged wrongful retention of 10% of the tax she paid. The court found it "obvious [that] canceled ticket

refunds relate to rates" (*Statland*, slip op. at 5), and that under *Morales*, plaintiff's State statutory and common law claims were preempted by section 1305(a)(1).

In *Schaeffer v. Delta Air Lines, Inc.* (S.D. Cal. September 18, 1992), No. 92—1190—E(LSP), the plaintiff's complaint alleged consumer fraud and breach of contract for the airline's failure to disclose in mailings to and oral communications with frequent flyer program members an increase in mileage requirements necessary to obtain a free flight. The complaint was found to be legally and factually deficient. The court stated, however, that even if the pleading deficiencies could be corrected by amendment, the action could not be sustained under the broad definition ascribed to the phrase "relates to" in *Morales*. The court found that the allegations *related to* both the advertisements and services of an airlines, and thus were preempted under section 1305(a)(1).

In *Vail v. Pan Am Corp.* (1992), 260 N.J. Super. 292, 616 A.2d 523, plaintiffs brought an action alleging fraud, consumer fraud, and breach of contract, charging that the airline falsely advertised that it was initiating an enhanced security program and charged $5 per ticket to defray the costs of the program when, in fact, the airline did not provide any such program. The complaint sought, *inter alia*, a refund of the $5 surcharge. Plaintiff argued that her claims were merely traditional actions for fraud and breach of contract which could have only a remote effect upon the rates and services of the airline. The *Vail* court found the broad interpretation given to section 1305(a)(1) by *Morales* was dispositive of plaintiff's claims, reasoning that if plaintiff's action were allowed, the State would be permitted to determine whether an airline's advertising was false and deceptive and whether the services advertised were in fact provided, and to fashion remedies, including proscribing certain advertising and compelling the airline to repay the surcharge portion of the rate charged.

The court determined that plaintiff's claims related to the services and rates of the airline and were, therefore, preempted under section 1305(a)(1). See also *Cannava v. USAIR, Inc.* (D. Mass. January 7, 1993), No. 91—3003—F (passenger's claims for intentional infliction of emotional distress, violations of State unfair practices statute and breach of an implied contractual obligation to provide courteous service were preempted under the interpretation ascribed to section 1305(a)(1) in *Morales*).

I do not agree with the majority that plaintiffs' claims bear only tangential, tenuous, or remote relation to American's rates, routes, and services because they do not seek to establish rates, determine routes or dictate the services American must provide. Plaintiffs' actions seek a State-court determination that American violated the Consumer Fraud Act through deceptive and unfair advertising and promotion of the AAdvantage program. Plaintiffs' actions also seek a State-court adjudication that American has a contractual obligation to provide, and plaintiffs have an enforceable right to receive, either certain specific fares, flights and seats in exchange for earned mileage credits, or monetary compensation in lieu thereof. Under the rationale of *Morales* and its progeny, plaintiffs' claims have a connection with and relation to American's rates and services, and are preempted by section 1305(a)(1) of the Deregulation Act.

I further dissent from the majority's statement that American's alteration of the terms of the AAdvantage program "constituted a breach of contract which entitled plaintiffs to pursue an available remedy." (157 Ill. 2d at 473.) This case is before us on the denial of American's motion to dismiss. Thus, I believe that it is both premature and inappropriate to reach or address the merits of plaintiffs' claims.