Norma L. KIEFER and Robert C. Kiefer, Appellants,

v.

CONTINENTAL AIRLINES, INC., Appellee.

No. 01–91–01286–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 11, 1994.

Rehearing Denied Sept. 22, 1994.

Grant Gealy, Houston, for appellants.

Sarah B. Duncan, San Antonio, Jennifer Bruch Hogan, M. Cody Mueller, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and HUTSON–DUNN and WILSON, JJ.

## OPINION

WILSON, Justice.

Norma L. Kiefer and her husband Robert C. Kiefer (the Kiefers) appeal from a summary judgment rendered in favor of Continental Airlines, Inc. (Continental) on the basis of federal preemption. The Kiefers raise four points of error. We reverse and remand for trial on the merits.

A defendant moving for summary judgment has the burden to show that, as a matter of law, there is no genuine issue of material fact as to one or more of the essential elements of the plaintiffs' cause of action. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex. 1986); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970); *Goldberg v. United States Shoe Corp.,* 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Every reasonable inference will be indulged in favor of the non-movants, and any reasonable doubt will be resolved in their favor. *Continental Casing Corp. v. Samedan Oil Corp.,* 751 S.W.2d 499, 501 (Tex. 1988); *Goldberg,* 775 S.W.2d at 752.

In the light most favorable to the Kiefers, the non-movants, the summary judgment evidence shows that Mrs. Kiefer was a passenger on a Continental flight from Pittsburgh, Pennsylvania, to Houston, during which a Continental flight attendant dropped a bag from an overhead storage bin onto Mrs. Kiefer's head, injuring her.

Mrs. Kiefer and her husband sued Continental for personal injuries and loss of society, respectively; they each asserted a state common-law negligence cause of action. Continental moved for summary judgment, based on its contention that the Kiefers' claims were preempted by section 4(a) of the Airline Deregulation Act of 1978, as amended (the 1978 Act),[1] codified at 49 U.S.C.A.App. § 1305 (West Pamph.1994). The trial court ruled that, "Continental Airlines, Inc. is entitled to summary judgment as follows. Ordered that the cause of action is dismissed as being preempted by section 1305 of Federal Aviation Act."[2] Within 30 days after the trial court signed the order granting summary judgment for Continental, the Kiefers filed their "motion for new trial or to alter or amend judgment," asserting that the court dismissed their suit without adequate consideration of their amended petition, filed five days before the summary judgment hearing, which had added two new claims: an implied federal cause of action under section 404 of the Federal Aviation Act of 1958, as amended (the 1958 Act),[3] codified at 49 U.S.C.A.App. § 1374 (West 1976 & Pamph.1994);[4] and a federal common-law negligence and gross negligence cause of action. In that motion, the Kiefers prayed that the trial court set aside the summary judgment in full, or, in the alternative, that it amend the judgment to reflect that only their state-law cause of action was dismissed. The trial court denied the Kiefers' motion, and this appeal followed.

Federal preemption is an affirmative defense. *See Gorman v. Life Ins. Co. of North America,* 811 S.W.2d 542, 546 (Tex.), *cert. denied,* —— U.S. ——, 112 S.Ct. 88, 116 L.Ed.2d 60 (1991) (preemption under Employee Retirement Income Security Act (ERISA)); *see also City of Houston v. First City,* 827 S.W.2d 462, 467–68 (Tex.App.— Houston [1st Dist.] 1992, writ denied) (preemption under federal banking laws pleaded

---

1. Act of October 24, 1978, Pub.L. No. 95–504, 1978 U.S.C.C.A.N. (92 Stat.) 1705, 1707 (1978).

2. The Airline Deregulation Act of 1978 amended the Federal Aviation Act of 1958. See the preamble to the 1978 Act, 1978 U.S.C.C.A.N. at (92 Stat.) 1705.

3. Act of August 23, 1958, Pub.L. No. 85–726, 1958 U.S.C.C.A.N. (72 Stat. 731) 855, 888 (1958).

4. Section 1374 states, in pertinent part, that all air carriers must "provide safe and adequate service[.]"

as affirmative defense); *Dueringer v. General American Life Ins. Co.*, 842 F.2d 127, 129–30 (5th Cir.1988) (ERISA preemption). When a defendant moves for summary judgment based on an affirmative defense, the defendant has the burden to prove conclusively all the elements of the affirmative defense as a matter of law. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). Unless the movant conclusively establishes the affirmative defense, the non-movant plaintiffs have no burden in response to a defendant's motion for summary judgment filed on the basis of an affirmative defense. *Torres v. Western Casualty & Sur. Co.*, 457 S.W.2d 50, 52 (Tex.1970).

A summary judgment for the defendant, disposing of the entire case, is proper only if, as a matter of law, the plaintiff could not succeed upon any of the theories pleaded. *Havens v. Tomball Community Hosp.*, 793 S.W.2d 690, 691 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Dodson v. Kung*, 717 S.W.2d 385, 390 (Tex.App.—Houston [14th Dist.] 1986, no writ). Once the defendant produces sufficient evidence to establish the right to a summary judgment, the plaintiffs must set forth sufficient evidence to give rise to a fact issue to avoid an adverse summary judgment. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex.1972).

When a trial court's order granting summary judgment specifies the grounds relied on for its ruling, the summary judgment will be affirmed on appeal if the specified grounds are meritorious. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993); *River Consulting, Inc. v. Sullivan*, 848 S.W.2d 165, 168–69 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

In their first point of error, the Kiefers assert that the summary judgment was erroneous because section 1305 does not preempt their state common-law negligence cause of action. Section 1305 provides, in pertinent part:

**(a) Preemption**

(1) [N]o State ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority ... to provide [interstate] air transportation.

49 U.S.C.A.App. § 1305 (West Pamph.1994).

The express terms of section 1305 plainly indicate that Congress intended to preclude state lawmaking with respect to some body of subject matter. Within constitutional limits, Congress may, of course, preempt state lawmaking by so stating in express terms. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). The question here is not *whether* state laws have been preempted, as it is in the case of implied preemption, but rather, the *extent* of that preemption.

The Kiefers contend that the 1978 Act was intended to address economic issues only, and was not intended to preempt state-law remedies for injuries that passengers might incur during the course of receiving "services" from an interstate air carrier. Continental contends that the 1978 Act was also addressed to "safety concerns," and that, in that aspect, the 1978 Act expressly preempts the Kiefers' state common-law negligence cause of action, because, Continental reasons, that cause of action "relat[es] to ... services of [an] air carrier having authority ... to provide [interstate] air transportation."

To support its view, Continental relies primarily upon a pair of Fifth Circuit cases, *O'Carroll v. American Airlines*, 863 F.2d 11 (5th Cir.1989), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989), and *Baugh v. Trans World Airlines*, No. 90–2074, slip op. (5th Cir.1990) (unpublished).[5]

In *O'Carroll*, the plaintiff held a valid ticket for a Chaparral Airlines flight between Portland, Maine and Alexandria, Louisiana. When he and his companion, Rollins, boarded

---

**5.** Fifth Circuit local rule 47.5, as in effect at the time *Baugh* was decided, indicates that its opinions go unpublished only when, in the court's own assessment, they have "no precedential value." *Baugh*, slip. op. at 1 n. 1. Unlike rule 90 of the Texas Rules of Appellate Procedure, however, the federal rule does not expressly prohibit the citation of unpublished opinions as authority. Accordingly, without deciding whether Continental is entitled, as a matter of right, to have us consider *Baugh* here, we will do so.

for the last leg of that trip, they were loud, boisterous, and intoxicated. At one point, Rollins proclaimed his willingness to "help fly the plane." During the ensuing chain of events, an "irregularity" in O'Carroll's ticket was discovered; he was asked to disembark; and, uttering obscenities, he refused to move. Ultimately, police officers were called, and removed both O'Carroll and Rollins from the aircraft. O'Carroll sued because of what he alleged to be his wrongful exclusion from that flight, asserting what the Fifth Circuit described only as "various state law claims." 863 F.2d at 12.

The Fifth Circuit found that O'Carroll's claims were preempted by section 1305. In so holding, however, the Fifth Circuit relied at least in part on the "broad, expansive discretion," accorded to air carriers about *whether* to provide services at all, and quoted the following statutory language:

> Subject to reasonable rules and regulations prescribed by the Secretary of Transportation, any [interstate air] carrier may ... refuse transportation of a passenger or property when, in the opinion of the carrier, such transportation would or might be inimical to safety of flight.

49 U.S.C.A.App. § 1511(a) (West Pamph. 1994). The Fifth Circuit construed section 1511 to permit carriers to refuse to carry even the holders of valid tickets, but observed also that an implied cause of action against an air carrier existed under section 1374 for abuse of the discretion accorded to the carrier under section 1511. 863 F.2d at 12–13.

*O'Carroll* concerned wrongful exclusion from a flight, an entirely different variety of injury than at issue here. There is no assertion, and no summary judgment evidence, that any of the safety considerations germane under section 1511 were implicated in the transaction between Mrs. Kiefer and Continental.

In *Baugh*, the facts were similar to those before us here. Baugh was a passenger on a flight from Houston to New York, New York, during which a flight attendant stepped on Baugh's foot, causing her injury. Slip. op. at 1–2. Like Mrs. Kiefer, Baugh sued the air carrier in Texas state court for personal injuries, asserting a state common-law negligence cause of action. Slip. op. at 2. The carrier removed Baugh's suit to federal district court based on diversity jurisdiction. *Id.* The federal district court then found that Baugh's claim was preempted by section 1305,[6] and dismissed her suit under FED. R.CIV.P. 12(b)(6) for failure to state a claim on which relief may be granted. Slip op. at 1–2. The Fifth Circuit affirmed the dismissal, holding that *O'Carroll* was controlling and that section 1305 preempted Baugh's claim because, given that Baugh's claim "ha[d] a connection with or reference to" services of an air carrier, the prosecution of that claim would constitute the enforcement of a "law ... relating to ... services of [an] air carrier." Slip op. at 2–3, 6. The court went on to conclude that any state-law claim based on an injury caused during a flight by an airline employee acting in the course of his employment arises out of the services of an air carrier, and is therefore barred under section 1305.[7]

Continental asserts that *O'Carroll* and *Baugh* clearly indicate that the Kiefers' state-law claims are preempted, and apparently argues that those decisions control the disposition of this case. We disagree. As noted above, *O'Carroll* is distinguishable from the case before us. Moreover, at the threshold, Continental's analysis fails to take adequate account of relevant decisions of the other federal courts of appeals and federal district courts.

We begin by noting that in three of the older cases in this line, without any mention of preemption, the federal courts addressed

---

**6.** The Fifth Circuit's opinion recites that the district court found "that the Federal Aviation Act ..., 49 U.S.C.App. §§ 1301 *et seq.*, preempted Baugh's state law claim"; its discussion of the law, however, focuses specifically on section 1305.

**7.** *See Baugh,* slip. op. at 3 ("Section 1305 clearly applies to Baugh's state law negligence claim. Since Baugh alleges her injury occurred during a flight and was caused by a flight attendant in the course of employment, the negligence action arises out of the services afforded passengers by TWA.").

and disposed of claims for personal injuries incurred when items fell from overhead storage bins. *See Plagianos v. American Airlines, Inc.*, 912 F.2d 57 (2nd Cir.1990) (unsecured compartment popped open during takeoff); *Smith v. Piedmont Airlines, Inc.*, 728 F.Supp. 914 (S.D.N.Y.1989) (compartment popped open on landing); *Duchesne v. American Airlines, Inc.*, 758 F.2d 27 (1st Cir.1985) (flight attendant opened overhead bin and caused metal luggage carrier to fall onto Duchesne's head). Standing alone, that silence in those cases would not, of course, warrant the conclusion that personal injury claims were not preempted by section 1305; however, the federal district court in *Stewart v. American Airlines, Inc.*[8]—one of the latest cases in this line, which we discuss below— looked to that same silence in a post-*Baugh* Fifth Circuit precedent[9] as part of the analysis by which it ultimately reached that very conclusion. *See* 776 F.Supp. at 1199–1200. Accordingly, we take note of the silence in those three older cases, in the interest of a complete analysis; but that is merely the beginning, not the end, of the analysis.

In *West v. Northwest Airlines, Inc.*, 923 F.2d 657 (9th Cir.1990), *vacated*, —— U.S. —— and ——, 112 S.Ct. 2932 and 2986, 119 L.Ed.2d 558 and 120 L.Ed.2d 864 (1992),[10] West, a ticket holder who was denied a seat on an overbooked flight, sued the airline for, *inter alia*, breach of the covenant of good faith and fair dealing under Montana law. 923 F.2d at 658–59. The district court granted summary judgment for Northwest on that claim, holding that West's state-law claim was preempted by section 1305(a)(1). The Ninth Circuit reversed, saying

we disagree with Northwest and the district court that "law[s] ... relating to airline services" encompass all state laws that affect airline services, however tangentially. This interpretation of § 1305(a)(1) would unduly expand preemption and ignore our presumption against federal preemption in this traditional state law area. Instead, we find that Section 1305(a)(1)

preempts claims only when the underlying statute or regulation itself relates to airline services, regardless of whether the claim arises from a factual setting involving airline services. Thus, state laws that merely have an *effect* on airline services are not preempted.... [I]n the instant case state law simply imposes a duty on all persons entering into contracts to act with good faith and fair dealing. The fact that this duty is applicable to airlines as well as the general public does not invoke federal preemption. We find, therefore, that West's state law claims are not expressly preempted by the [Federal Aviation Act of 1958].

923 F.2d at 660.

In *Salley v. Trans World Airlines, Inc.*, 723 F.Supp. 1164 (E.D.La.1989), the Salleys brought both state-law claims and a federal claim under section 1374, based on the airline's refusal, for reasons unrelated to flight safety, to carry them. 723 F.Supp. at 1165, 1166. Based on *O'Carroll*, the district court initially granted partial summary judgment for the airline, and dismissed the Salleys' state-law claims as preempted by the 1958 Act. 723 F.Supp. at 1165. Trans World then moved for summary judgment to dismiss the Salleys' section 1374 claim, asserting that that section had ceased to be effective before the events giving rise to their claims occurred. *Id.* Upon the Salleys' motion for reconsideration of the dismissal of their state-law claims, the district court reinstated the Salleys' state-law claims, at least in part because it concluded that the dismissal of the federal claim would otherwise have left the Salleys without any cause of action. The court explained its decision, saying:

Initially, *this Court read the O'Carroll decision as broadly holding that no state law claims may be brought in suits complaining of airline services*. This was the interpretation urged by TWA, which noted that under *O'Carroll*, the Salleys would still have a federal cause of action under [49 U.S.C.A.App.] § 1374. On reconsidera-

---

8. 776 F.Supp. 1194 (S.D.Tex.1991).

9. *Seidman v. American Airlines, Inc.*, 923 F.2d 1134 (5th Cir.1991).

10. The U.S. Supreme Court vacated the *West* decision for reconsideration in light of *Morales v. Trans World Airlines, Inc.* We consider *Morales* below.

tion, and in view of the fact that § 1374 ceased to be effective [on January 1, 1985, after the events giving rise to the Salleys' cause of action], *the O'Carroll decision should be read more narrowly[.]*

723 F.Supp. at 1165 (emphasis added).[11]

In *Stewart v. American Airlines, Inc.,* 776 F.Supp. 1194 (S.D.Tex.1991), Stewart was a passenger aboard an American commuter flight, and suffered neck injuries when the aircraft landed with a deflated nose gear tire. 776 F.Supp. at 1195. He brought state-law tort claims in state district court, alleging that American was negligent in, *inter alia,* failing properly to maintain the aircraft. 776 F.Supp. at 1195, 1196–97. American removed the case to federal district court, based on its assertion that Stewart's claims were preempted, and then, on that same basis, moved to dismiss the suit.[12] 776

F.Supp. at 1195. The *Stewart* court distinguished *Trans World Airlines, Inc. v. Mattox,* 897 F.2d 773 (5th Cir.1990), *cert. denied,* 498 U.S. 926, 111 S.Ct. 307, 112 L.Ed.2d 261 (1990), *and cert. denied,* —— U.S. ——, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992); *O'Carroll;* and other cases also holding state-law claims preempted by section 1305,[13] and instead relied upon *Salley* and several other decisions;[14] it held that Stewart's claims were not related to "services" within the meaning of section 1305; did not, in any event, conflict with the express provisions of the 1958 Act, as amended; and were not preempted. 776 F.Supp. at 1198, 1199. Accordingly, the court remanded the action to the 281st District Court of Harris County. 776 F.Supp. at 1200.

The Fifth Circuit's interpretation, in *O'Carroll* and *Baugh,* of the extent of federal

11. The *Salley* court relied on 49 U.S.C.A.App. § 1551(a)(4)(C) for its conclusion that section 1374 ceased to be effective on January 1, 1985. We reach a different conclusion.

Section 1551 is the codification of section 1601 of the 1958 Act, which was first added to the 1958 Act by section 40(a) of the 1978 Act. The particular portion of section 1551 that the *Salley* court relied upon was added by section 3(c) of the Civil Aeronautics Board Sunset Act of 1984, Act of October 4, 1984, Pub.L. No. 98–443, 1984 U.S.C.C.A.N. (98 Stat.) 1703, 1703 (1984).

Section 1551(a)(4)(C), as in effect when *Salley* was decided, states, in pertinent part,
  **(a) Termination of authority**
   ....
   (4) The following provisions ... (to the extent [they] relate to interstate and overseas air transportation) and the authority of the [Civil Aeronautics] Board with respect to such provisions (to the same extent) shall cease to be in effect on January 1, 1985: ...
   (C) Section 1374 of this title *(except insofar as such section requires air carriers to provide safe and adequate service).*
49 U.S.C.A.App. § 1551(a)(4)(C) (West Pamph. 1994) (emphasis added).

The *Salley* court did not address the proviso portion of section 1551(a)(4)(C); it evidently overlooked both that proviso and sections 1551(b)(1)(E) and (b)(2), which state:
  **(b) Transfer of certain authority**
   (1) The following authority of the [Civil Aeronautics] Board is transferred to the following Federal departments and instrumentalities:
   ...
   (E) All authority of the Board under this chapter which is not terminated under [49 U.S.C.A.App. § 1551(a)] on or before January 1, 1985, and is not otherwise transferred under

this subsection is transferred to the Department of Transportation.
   (2) Any authority transferred under paragraph (1) of this subsection shall take effect on January 1, 1985.
49 U.S.C.A.App. § 1551(b)(1)(E), (b)(2) (West Pamph.1994).

12. The court considered Stewart's motion to remand together with American's motion to dismiss, reasoning that the applicability of an exception to the well-pleaded complaint rule (which, if applicable, would have allowed the suit to remain in federal court) was governed by whether Stewart's claims were, in fact, preempted. 776 F.Supp. at 1195, 1196.

13. *Illinois Corp. Travel v. American Airlines,* 889 F.2d 751 (7th Cir.1989), *cert. denied,* 495 U.S. 919, 110 S.Ct. 1948, 109 L.Ed.2d 311 (1990); *Anderson v. USAir,* 818 F.2d 49 (D.C.Cir.1987); *Smith v. America West Airlines,* No. H–91–1550, 1991 WL 296832 (S.D.Tex. August 30, 1991) (unpublished); *Von Anhalt v. Delta Air Lines, Inc.,* 735 F.Supp. 1030 (S.D.Fla.1990).

14. *Silkwood v. Kerr McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984); *Nader v. Allegheny Airlines,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976); *Seidman v. American Airlines, Inc.,* 923 F.2d 1134 (5th Cir.1991); *Bieneman v. City of Chicago,* 864 F.2d 463 (7th Cir.1988), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2099 and 2100, 104 L.Ed.2d 661 (1990); *In re Air Crash Disaster at John F. Kennedy Int'l Airport,* 635 F.2d 67 (2d Cir.1980); *In re Air Crash Disaster at Sioux City, Iowa,* 734 F.Supp. 1425 (N.D.Ill.1990); *In re Air Crash Disaster at Stapleton Int'l Airport,* 721 F.Supp. 1185 (D.Colo. 1988).

preemption of state law by section 1305, found little favor among the other federal courts, including the federal district courts of the circuit. The *Salley* and *Stewart* courts, which were bound to follow any Fifth Circuit precedent on point, distinguished *O'Carroll* and *Baugh;* moreover, the *Stewart* court did so in the context of a passenger's claim for personal injuries.

Finally, in *Margolis v. United Airlines, Inc.,* 811 F.Supp. 318 (E.D.Mich.1993), one more district court weighed in against *Baugh.* Margolis sued for injuries allegedly sustained when an item fell on her from an overhead bin. United moved to dismiss the complaint based on federal preemption. The court, with full cognizance and consideration of *Morales,* held that Margolis's claims were not preempted, and denied United's motion to dismiss. 811 F.Supp. at 319.

After *Margolis,* the Fifth Circuit has distanced itself from its own decision in *Baugh.* In *Hodges v. Delta Airlines, Inc.,* 4 F.3d 350 (5th Cir.1993), the court said that Hodges' claim for injuries caused by an object falling from an overhead bin was not preempted, but nevertheless affirmed the district court's summary judgment in Delta's favor, with the observation that *Baugh* compelled that result. 4 F.3d at 356. The panel then suggested, in its opinion, en banc review.[15] The same day, the same panel also issued *Smith v. America West Airlines, Inc.,* 4 F.3d 356 (5th Cir.1993), concerning state law negligence claims arising from an airliner hijacking, which the district court dismissed as preempted by section 1305. Again, the court was compelled, by its *Baugh* decision, to

affirm. "Until this court overturns or modifies its opinions in *Baugh* and *O'Carroll,*" it said, "further speculation on the preemptive scope of section 1305 is moot." 4 F.3d at 358.

On January 12, 1994, the Fifth Circuit ordered *Hodges* reheard *en banc.* See 12 F.3d 426.

Unlike the *Salley* and *Stewart* courts, and the Fifth Circuit itself, this Court is not bound to follow the decisions of the Fifth Circuit or the other lower federal courts. *Carlisle v. Philip Morris, Inc.,* 805 S.W.2d 498, 505 (Tex.App.—Austin 1991); *Barstow v. State,* 742 S.W.2d 495, 501 n. 2 (Tex.App.— Austin 1987, writ denied); *Woodard v. Texas Dept. of Human Resources,* 573 S.W.2d 596, 598 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.). We are free to interpret federal law independently, though in the first instance we typically seek guidance from among the decisions of the lower federal courts. See *ASARCO v. Kadish,* 490 U.S. 605, 617, 109 S.Ct. 2037, 2045, 104 L.Ed.2d 696 (1989) (state courts possess authority, absent provision for exclusive federal jurisdiction, to render binding judicial decisions that rest on their own interpretations of federal law).[16] When we do seek that guidance, we may choose to depart from the course the Fifth Circuit has taken, and instead follow decisions of other circuits or even those of federal district courts, if we find those decisions to be better-reasoned.[17] That is the case here.

■ Were we to follow *O'Carroll* and *Baugh,* then, absent an extension of the implied cause of action under section 1374

---

15. In the Fifth Circuit, all opinions, even unpublished ones, bind subsequent panels absent a contrary decision of the U.S. Supreme Court or of the Fifth Circuit itself sitting *en banc. Garcia v. United States,* 22 F.3d 609, 611 (5th Cir.1994).

16. *Accord, United States ex rel. Lawrence v. Woods,* 432 F.2d 1072, 1076 (7th Cir.1970), *cert. denied,* 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971) (lower federal courts exercise no appellate jurisdiction over state tribunals and therefore their decisions are not conclusive on state courts); *Owsley v. Peyton,* 352 F.2d 804, 805 (4th Cir.1965) ("Though state courts may for policy reasons follow the decisions of the [federal] Court of Appeals whose circuit includes their state, . . . they are not obliged to do so.").

17. *Cf. Wolens v. American Airlines,* 207 Ill.App.3d 35, 152 Ill.Dec. 16, 565 N.E.2d 258 (1990), *aff'd,* 147 Ill.2d 367, 168 Ill.Dec. 133, 589 N.E.2d 533 (1992), *vacated* — U.S. ——, 113 S.Ct. 32, 121 L.Ed.2d 6 *opinion after remand,* 626 N.E.2d 205, 157 Ill.2d 466, 193 Ill.Dec. 172 (1993) (in course of holding state-law damage action against airline for engaging in deceptive practices was not preempted by the 1958 Act, despite *O'Carroll* and similar decisions, Illinois intermediate appellate court relied upon decisions of Ninth and Second Circuits; federal district courts in Ninth, Second, Seventh, and Third Circuits; and Louisiana and California state court decisions, in addition to Seventh Circuit decisions, without lending the latter any special weight).

found in *O'Carroll* to the redress of personal injuries incurred while receiving airline services, the Kiefers and others similarly situated would have no legal remedy. In the absence of a clear Congressional expression of both an intention to effect that very result and a legitimate governmental purpose for it, we find such a result unlikely, and we are unwilling to believe that it is in keeping with Congress' intent. In statutory construction, our interpretation must be fair, rational, and reasonable, *Wilkomirski v. Texas Criminal Information Center*, 845 S.W.2d 424, 426 (Tex.App.—Houston [1st Dist.] 1992, no writ), and contrary conclusions or deductions are to be avoided, *Texas Employers' Ins. Ass'n v. Holmes*, 145 Tex. 158, 196 S.W.2d 390, 409 (1946) (dissenting opinion).[18] We find ourselves in the same position that once confronted the U.S. Supreme Court, when considering a similar contention that a state common-law tort action was preempted by federal law:

> Here Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the injured [parties] from this right of recovery will ... in effect, grant [the alleged tortfeasor] immunity from liability for [its allegedly] tortious conduct. We see no substantial reason for reaching such a result.

*United Constr. Workers v. Laburnum Constr. Corp.*, 347 U.S. 656, 663–64, 74 S.Ct. 833, 837, 98 L.Ed. 1025 (1954). Likewise, in the absence of a clear Congressional expression of an intention to preempt state common-law negligence claims for personal injuries arising out of the services of an air carrier, we see no substantial reason to hold that the Kiefers' claims are preempted by section 1305, only to likely hold, in turn, that an implied cause of action under section 1374 to redress those same injuries necessarily exists.

The decision we reach here finds further support in the United States Supreme Court's decision in *Morales v. Trans World Airlines, Inc.*, —— U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). There, the Court considered whether the 1978 Act "preempts the States from prohibiting allegedly deceptive airline fare advertisements through enforcement of their general consumer protection statutes." —— U.S. at ——, 112 S.Ct. at 2034. The Court answered that question in the affirmative, holding that the particular fare advertising provisions before it, embodied in the Air Travel Industry Enforcement Guidelines promulgated by the National Association of Attorneys General, were expressly preempted by section 1305. —— U.S. at ——, 112 S.Ct. at 2041.

As noted above,[19] the Court vacated the *West* decision for reconsideration in light of *Morales*. —— U.S. at ——, ——, 112 S.Ct. at 2932, 2986. In doing so, however, the Court, on our reading, neither disagreed with the Ninth Circuit's conclusion in *West* that state laws that merely have some tangential effect on airline services are not preempted, nor adopted the contrary reasoning Northwest had successfully urged upon the district court in *West*. The five-member *Morales* majority acknowledged that some state actions may affect rates, routes or services in "too tenuous, remote, or peripheral a manner" to be preempted by even the expansive "relates to" preemptive language of section 1305, but then held, simply, that the facts before the Court did not present a borderline question, and declined to express any view about "where it would be appropriate to draw the line." —— U.S. at ——, 112 S.Ct. at 2040. Moreover, the three dissenters in *Morales* reasoned much as had the *West* court, saying "the presumption against preemption of traditional state regulation counsels that we not interpret [section 1305(a)] to pre-empt every traditional state regulation that might have some indirect connection

---

**18.** *Cf. Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 742, 105 S.Ct. 1598, 1606, 84 L.Ed.2d 643 (1985) ("Absent a far clearer expression of congressional intent, we are unwilling to read the [Atomic Energy] Act as creating such a seemingly irrational bifurcated system."); *Ridgway v. Gulf Life Ins. Co.*, 578 F.2d 1026, 1031 (5th Cir.1978) ("It is irrational to suppose that the [Texas] legislature intended to prohibit motor carriers from insuring their employees, as urged by Gulf.").

**19.** *See* n. 10, *supra*.

with or relationship to airline rates, routes, or services unless there is some indication that Congress intended that result." ——— U.S. at ———, 112 S.Ct. at 2056. Looking beyond the language of section 1305 itself to divine the underlying Congressional intent, the dissent first noted (as had the majority) that when Congress enacted the 1978 Act, it retained the savings clause of the 1958 Act, codified at 49 U.S.C.A.App. § 1506 (West 1976), that had preserved common-law and statutory remedies.[20] The dissent next observed that "the state prohibitions against deceptive practices that had coexisted with federal regulation in the airline industry for 40 years [between 1938 and 1978] . . . were not mentioned in either the [1978 Act] or its legislative history"; then analyzed the House, Senate, and Conference Reports on the 1978 Act,[21] and found "no indication that House and Conferees thought . . . [the House's] 'relating to rates, routes, or services' [language] pre-empted substantially more than state laws 'regulating rates, routes, or services' "; and, ultimately, concluded that Congress had not intended, in the 1978 Act, to "pre-empt every state and local law and regulation that . . . increases the airlines' costs of doing business and, consequently, has a . . . 'significant impact' upon their rates[, routes, or services]." ——— U.S. at ———, ———, ———, 112 S.Ct. at 2057, 2058, 2059.

Here, like the *Morales* dissenters, we have also reviewed the 1978 Act and the associated House, Senate, and Conference Reports, and we find no express reference to suits for personal injuries arising out of the services of an air carrier. However, section 20(d)(1) of the 1978 Act, codified at 49 U.S.C.A.App. § 1371(q) (West Pamph.1994), imposes a requirement that an air carrier maintain insurance, as ordered by the Civil Aeronautics Board,[22] for paying "amounts for which . . .

such air carrier may become liable for bodily injuries to or the death of any person, or for loss of or damage to property of others, resulting from the operation or maintenance of aircraft[.]" Section 33(a) of the 1978 Act, codified in pertinent part at 49 U.S.C.A.App. § 1389(h) (West Pamph.1994), repeats, without material difference, that same requirement, imposing it as a prerequisite to any air carrier receiving government compensation for providing essential air service to small communities; and section 32, codified in pertinent part at 49 U.S.C.A.App. § 1386(b)(4) (West Pamph.1994), imposes upon so-called commuter air carriers a similar requirement that they "conform[] to such liability insurance requirements . . . as the Board shall from time to time adopt in the public interest." Plainly, these insurance requirements contemplate that suits in which the plaintiffs seek compensation for personal injuries or property loss resulting from the operation or maintenance of aircraft will or may be brought against air carriers. Equally plainly, Congress did not, in the 1978 Act, intend to preclude such suits; if such suits were precluded, the insurance requirements of the Act would be nonsensical, given that they would unnecessarily financially burden air carriers while providing no substantial benefit to the public in return.

Neither the 1978 Act nor any of the three Congressional reports elaborates upon or further explains these insurance requirements, or their relation to the suits they contemplate. Moreover, neither the Act nor the reports mentions the forum or fora in which Congress contemplated such suits would or might be brought, or the source or sources—i.e. state law or federal law—of the causes of action that might be pleaded in any such suit. In the absence of any such men-

---

**20.** Section 1506 provides, "Nothing contained in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies." This language first appeared in the Civil Aeronautics Act of 1938, the predecessor to the 1958 Act. ——— U.S. at ——— nn. 3 & 4, 112 S.Ct. at 2056 nn. 3 & 4 and accompanying text.

**21.** H.R.Rep. No. 1211, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.C.C.A.N. 3737; S.Rep. No. 631, 95th Cong., 2d Sess. (1978); H.R.Conf.Rep. No. 1779, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.C.C.A.N. 3773.

**22.** This authority is now exercised by the federal Department of Transportation, pursuant to 49 U.S.C.A.App. § 1551(b)(1)(E) and (b)(2). See n. 11, *supra*.

tion, we conclude that Congress did not intend to alter existing law on either matter.

As did the *Morales* majority, we express no opinion about precisely where the delineation between those state laws which are preempted by section 1305, and those which are not, properly should lie. Likewise, we also believe that the facts before us do not present a borderline case. The *Morales* court decided that the state laws at issue there, regulating airline fare advertisements, lay well on one side of that yet-to-be-delineated border. Personal injury suits, traditionally within the separate sphere of governmental authority reserved to the states under our federalist system, likewise lie well on the other side of that border.

■■■ Even though they generally have the potential to increase the air carrier's cost of doing business, claims for personal injuries are not preempted by section 1305 merely because they arise from a factual setting involving airline services. We hold that the Kiefers' respective state common-law negligence claims for personal injuries and loss of society were not expressly preempted by section 1305.

■■ In addition to express preemption, federal law may also preempt state law either by implication from pervasiveness of a federal regulatory scheme which indicates a Congressional intent to occupy the field, or, to the extent of the conflict, by conflict with state law. *O'Carroll*, 863 F.2d at 12; *Osburn v. Anchor Laboratories*, 825 F.2d 908, 911 (5th Cir.1987), *cert. denied*, 485 U.S. 1009, 108 S.Ct. 1476, 99 L.Ed.2d 705 (1988). However, we read the trial court's order as having granted summary judgment exclusively on the basis of express preemption. Accordingly, neither implied preemption nor preemption by conflict may be considered here as grounds for affirming the summary judgment.

At the time it ruled, the trial court lacked the guidance of *Stewart* and *Morales* in particular, and the court erred when it granted summary judgment for Continental on the Kiefers' state common-law negligence claims.

Point of error one is sustained.

In their remaining points of error, the Kiefers complain of the denial of the motion for new trial or to alter or amend the summary judgment, and assert that the summary judgment was erroneous because they have an implied cause of action under section 404 of the 1958 Act (point two); because they have a cause of action under federal common law (point three); and because if section 1305 is applied so that they have no legal remedy for the injuries they suffered here, then the Act as a whole and/or section 1305 violates the equal protection of the laws guaranteed to them under the fourteenth amendment (point four). In their prayer for relief, the Kiefers plainly state that they seek a holding that section 1305 does not preempt their state common-law cause of action, and a consequent reversal and remand to the trial court for trial on the merits. Their prayer shows that they present points two through four only in the alternative. Accordingly, having sustained the Kiefers' first point of error, we do not reach their remaining points. We express no opinion on the trial court's denial of the Kiefers' motion for new trial or to alter or amend the summary judgment.

The summary judgment for Continental on the Kiefers' state common-law negligence claims is reversed and remanded for trial on the merits.

HUTSON–DUNN, J., dissenting.

HUTSON–DUNN, Justice, dissenting.

Appellant's first point of error raises the issue of whether § 1305 of the Airline Deregulation Act preempts its state tort law causes of action.

In 1978, Congress enacted the Airline Deregulation Act (ADA). 49 U.S.C.A.App. §§ 1301–1389 (West 1976 & Supp.1994). To ensure that the States would not undo federal deregulation with regulation of their own, Congress included a preemption provision, prohibiting the States from enacting or enforcing "any law ... relating to rates, routes or services of any air carrier...." 49 U.S.C.A.App. § 1305(a)(1). An analysis of the interpretation and scope of this clause should begin with a thorough review of the

U.S. Supreme Court's decision in *Morales v. Trans World Airlines, Inc.,* —— U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

The *Morales* case dealt with the question of whether the ADA preempts the States from prohibiting allegedly deceptive airline fare advertisements through enforcement of their general consumer protection statutes. The Court emphasized that preemption can be either "express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly constrained in its structure or purpose." *Id.* at ——, 112 S.Ct. at 2036. The Court also noted that the issue is one of statutory intent, in which case it must address the specific language used by Congress under the assumption that "the ordinary meaning of that language accurately expresses the legislative purpose." *Id.* It is clear from the language employed by Congress that § 1305 expressly preempts the states from enacting or enforcing "any law ... relating to rates, routes or services of any air carrier...." *Id.* at ——, 112 S.Ct. at 2036–37. Having determined that § 1305 provides for express preemption, we must address the scope of such preemption.[1]

In determining the scope of § 1305 preemption, the Court concentrated on the meaning of the phrase "relating to." *Id.* at ——, 112 S.Ct. at 2037. In order to ascertain the meaning of "relating to," the Court looked at both the ordinary meaning of such words and the meaning ascribed to them in the context of the similarly worded preemption provision of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1144(a), which provides for preemption of "all State laws insofar as they ... *relate to* any employee benefit plan." *Id.* (emphasis added). The Court recognized that the ordinary meaning of "relating to" is a broad one, "to stand in some relation; ... refer; to bring into association with or connection with," (citing Black's Law Dictionary 1158 (5th ed. 1979)), such that the phrase expresses a broad preemptive purpose. *Id.* The Court further noted that it has held that

a state law "relates to" an employee benefit plan, and is preempted by ERISA, "if it has a connection with or reference to such a plan." *Id.* (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97–98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). The *Morales* Court then concluded that since the relevant language of the ADA is identical to that of ERISA, it is appropriate to adopt the same standard to such language. Hence, it held that any state laws having "a connection with or reference to airline 'rates, routes, or services' are preempted under 49 U.S.C.App. § 1305(a)(1)." *Morales,* —— U.S. at ——, 112 S.Ct. at 2037.

The Court did, however, recognize a limit to the broad preemptive effect of the language used in § 1305(a)(1). It noted that some state actions, despite "relating to" "rates," may affect airline fares "in too tenuous, remote, or peripheral a manner to have preemptive effect." *Id.* at ——, 112 S.Ct. at 2040 (citing *Shaw,* 463 U.S. at 101, 103 S.Ct. at 2901). The Court then refrained from expressing an opinion as to where it would be appropriate to draw the line, since the facts before it, as in *Shaw,* plainly did not present a borderline question. Therefore, we must address both whether appellant's state tort-law claims have a "connection with" or "reference to" airline "rates, routes, or services"; and, if so, whether said relation is too tenuous, remote, or peripheral to have a preemptive effect.

Appellant asserted a state common-law negligence cause of action, alleging that a Continental flight attendant dropped a bag from an overhead storage bin onto appellant's head. Appellee contends that such a claim "relates to" "services" and thus is preempted by § 1305(a)(1). In order to determine whether this state-law tort claim is indeed preempted, we must ascertain the scope of the term "services" as used in § 1305(a)(1). Although the term "services" is not defined within the ADA, it is not, as the appellant contends, ambiguous; therefore, we need not scurry to the legislative history in order to derive its meaning.[2] As

---

1. It should be noted the majority also recognizes that § 1305 provides for express preemption.

2. In *Morales,* the dissent looked beyond the express language of § 1305 to determine the congressional intent. The majority here, apparently

*Morales* instructs, we may assume that the ordinary meaning of the specific language used by Congress accurately expresses the legislative purpose. The ordinary meaning of the term "service" is: "help, use, benefit; contribution to the welfare of others." Webster's Ninth New Collegiate Dictionary 1076 (1991). Appellant, though, contends that § 1305 states the term "services" in the context of the specific terms "rates" and "routes" such that the former term should be controlled by the latter terms. However, appellant offers no explanation as to how such terms would precisely alter the ordinary meaning of the term "services"; rather, appellant merely asserts that the ADA was intended to address economic issues only. I fail to see how the terms "rates" and "routes" require us to ascribe any meaning to the term "services" other than its aforementioned ordinary meaning.

Although no reported Texas cases have addressed the scope of the term "services" within the context of § 1305(a)(1), numerous federal district and circuit courts have. The cases are fairly evenly divided between those

holding that the claim was "related to" "services" and therefore preempted by § 1305,[3] and those holding precisely the opposite.[4] Three of the cases involved factual settings almost identical to the case *sub judice.*

In *Margolis,* a passenger who was allegedly struck by a luggage carrier which fell from an overhead bin brought a state-law negligence claim against the airlines and its employees. Apparently content with skirting the inconvenience of attempting to apply the precise language expressed in the statute, the court concluded that such claim was not preempted under § 1305(a)(1); asserting that Congress did not intend to preempt this type of common-law claim. *Margolis,* 811 F.Supp. at 322. As support for this contention, the court emphasized that the passenger would otherwise be left without a remedy.[5] *Id.* However, it is well settled that "where Congress has expressly preempted state common law damages actions ... its failure to provide a federal remedy will not defeat its intent to preempt state law." *Stamps v. Collagen Corp.,* 984 F.2d 1416, 1425 (5th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *see also Caterpillar Inc., v. Williams,* 482 U.S. 386,

---

finding such approach persuasive, also chose to review the legislative history of the statute. However, in response to the dissent's excursion, the *Morales* majority remarked that "legislative history need not confirm the details of changes in the law effected by statutory language before we will interpret that language according to its natural meaning." *Morales,* — U.S. at —, 112 S.Ct. at 2038.

**3.** *Baugh v. Trans World Airlines,* No. 90–2074, slip op. (5th Cir. Sept. 14, 1990) (unpublished); *Anderson v. USAir, Inc.,* 818 F.2d 49 (D.C.Cir. 1987); *Hingson v. Pacific Southwest Airlines,* 743 F.2d 1408 (9th Cir.1984); *Smith v. America West Airlines, Inc.,* 1991 WL 296832 (S.D.Tex., Aug. 30, 1991), *aff'd* 4 F.3d 356 (5th Cir.1993); *Von Anhalt v. Delta Air Lines, Inc.,* 735 F.Supp. 1030 (S.D.Fla.1990); *Williams v. Express Airlines I, Inc.,* 825 F.Supp. 831 (W.D.Tenn.1993); *Lawal v. British Airways, PLC,* 812 F.Supp. 713 (S.D.Tex. 1992); *Howard v. Northwest Airlines, Inc.,* 793 F.Supp. 129 (S.D.Tex.1992).; *Zachary v. Northwest Airlines, Inc.,* 1991 WL 487289 (S.D.Tex., Mar. 22, 1991). In addressing *Baugh,* the majority contends that Fifth Circuit local rule 47.5 indicates that opinions go unpublished when the court determines they have no precedential value. This contention, although technically accu-

rate, is quite misleading. Local Rule 47.5 provides that the "publication of opinions that have no precedential value *and* merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession" (Emphasis added.) Hence, it is clear that the *Baugh* court determined that its opinion was decided on the basis of "well-settled principles of law."

**4.** *West v. Northwest Airlines, Inc.,* 995 F.2d 148 (9th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1053, 127 L.Ed.2d 374 (1994); *Stewart v. American Airlines, Inc.,* 776 F.Supp. 1194 (S.D.Tex.1991); *Heller v. Delta Air Lines, Inc.,* 1993 WL 330093 (S.D.N.Y., Aug. 25, 1993); *In re Air Disaster,* 819 F.Supp. 1352 (E.D.Mich.1993); *Butcher v. City of Houston,* 813 F.Supp. 515 (S.D.Tex.1993); *Margolis v. United Airlines, Inc.,* 811 F.Supp. 318 (E.D.Mich.1993).

**5.** The court in *Hodges v. Delta Airlines, Inc.,* 4 F.3d 350, 354 (5th Cir.1993), felt that preemption should not apply in a case such as the one before this Court. The Fifth Circuit reasoned that Congress failed "to provide any federal remedy for persons injured by such conduct," and recognized a narrow definition of services. *See* note 6.

392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).[6]

In *Heller*, a passenger brought a negligence claim, alleging that the airlines' negligence caused a bag to fall from an overhead compartment onto her head. The court followed *Margolis*, agreeing that § 1305(a)(1) "does not go so far as to require preemption of a common-law negligence claim against an airline" arising out of "such an incident." *Heller*, WL 330093 at 2. The court concluded from the language and purpose of § 1305, that it "was not intended to be an insurance policy for air carriers against their own negligence." *Id.* (citing *Margolis*, 811 F.Supp. at 324). As noted above, the *Margolis* court failed to apply the Supreme Court's standard of broad preemption enunciated in *Morales*. Furthermore, the court erroneously relied on the prospect of leaving the passenger without a legal remedy in determining the preemptive effect of § 1305. Since *Heller* relies exclusively on *Margolis*, I find it to be unpersuasive as well.

In *Zachary*, a passenger, who was allegedly struck during flight by a suitcase which fell from an overhead compartment, brought a claim asserting that the airlines and its flight attendants rendered negligent services. The court noted that the United States Court of Appeals for the Fifth Circuit has held that by enacting § 1305, Congress intended to preempt state law claims relating to the services of an air carrier. *Zachary*, 1991 WL 487289 at 2 (citing *O'Carroll v. American Airlines, Inc.*, 863 F.2d 11, 13 (5th Cir. 1989)).[7]

The majority takes notice of both *O'Carroll* and *Baugh*, but contends that since the for-mer is distinguishable and the latter follows the former, neither control the disposition of this case. The majority asserts that *O'Carroll* involved alleged wrongful exclusion from a flight, an "entirely different variety of injury than at issue here." Although true, such difference does not render *O'Carroll* distinguishable. The *O'Carroll* court concluded that the state-law negligence claims were preempted by § 1305(a)(1) because they related to services. *See O'Carroll*, 863 F.2d at 12–13. I believe that the case stands for the general proposition that negligence claims are preempted by § 1305 if they are "related to" "services"; and the court in *Baugh* evidently agreed. In *Baugh*, the court noted that the issue was whether § 1305 "preempts a state law action of negligence relating to services aboard a commercial aircraft." *Baugh*, at 2. The court then concluded that since "O'Carroll ... is controlling, we find that it does." *Id.* In support of such conclusion, the court asserted that "since Baugh alleges her injury occurred during a flight and was caused by a flight attendant in the course of employment, the negligence action arises out of the services afforded passengers" by the air carrier. *Id.* at 3.

After dispensing of *O'Carroll* and *Baugh*, the majority then addresses the cases which it finds to be persuasive. The majority begins by citing three cases[8] which were wholly silent on the issue of preemption. It asserts that such silence indicates that the personal injury claims before those courts were not preempted by § 1305. One need not reflect at length to conclude that such an assertion, if adopted by this court, would set a dreadful precedent.[9] The only thing that

---

6. The majority also expresses concern that were we to preempt appellant's state law claim, appellant (and others similarly situated) would be left with no legal remedy for her injuries. Unfortunately, it is clear that in determining whether a claim is preempted, this concern may only be addressed in the context of *implied* preemption. *Stamps*, 984 F.2d at 1425.

7. In *O'Carroll*, the Fifth Circuit held that § 1305 preempted a ticket holder's state-law negligence claims for alleged wrongful exclusion from a flight, as such claims related to services. *See O'Carroll*, 863 F.2d at 13. The Fifth Circuit subsequently followed this decision in *Baugh*, a case involving facts similar to ours. In *Baugh*, a passenger brought a state-law action of negli-gence, alleging that a flight attendant stomped on her foot. The case is discussed in further detail below.

8. *Duchesne v. American Airlines, Inc.*, 758 F.2d 27 (1st Cir.1985); *Smith v. Piedmont Airlines, Inc.*, 728 F.Supp. 914 (S.D.N.Y.1989); *Plagianos v. American Airlines, Inc.*, 912 F.2d 57 (2nd Cir. 1990).

9. We were to adopt such a proposition, any case could be interpreted as indicating that any and all defenses not addressed by the court in its opinion are implicitly invalid. In effect, we would be penalizing Continental here, for the apparent oversight of the airlines' counsel in the cited cases.

ought to be inferred from these cases is that if a party fails to raise the issue of preemption, the claims asserted against it cannot not be preempted. It is thus clear that the majority's reliance on said cases is misplaced as they are inapposite.

In *West*, a ticket holder, who was denied a seat on an overbooked flight, sued Northwest Airlines for breach of the covenant of good faith and fair dealing under Montana law. The Ninth Circuit, purporting to apply the reasoning in *Morales*, held that West's claim for punitive damages under state contract and tort law was preempted by § 1305, but his claim for compensatory damages was not. *West*, at 151–52. The *West* majority opined that "the state contract and tort laws under which West seeks relief are within that range of statutes too tenuously connected to airline regulation to trigger preemption under the ADA, what the Morales court called 'borderline questions.'" *Id.* Since the *Morales* court did not address where it would be appropriate to draw the line, the *West* majority determined that it should look to agency regulations for guidance. *Id.* The *West* majority then noted that "if Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* The court cited a regulation as expressly contemplating that an injured passenger may seek relief in court for being bumped from an overbooked flight. *Id.* (citing 14 C.F.R. § 250.9(b) (1990)). The court concluded that this option would be eviscerated if it were to hold that West's claims were completely preempted. *Id.* at 152–53. I would choose not to follow *West* because of its misapplication of *Morales*. As the dissent in *West* noted, the court must first resort to the express language of the preemption statute and the *Morales* Court made clear that the "relating to" language is to have a very broad scope. *Id.* at 153; *Morales,* —— U.S. at —— – ——, 112 S.Ct. at 2036–37. The dissent then emphasized that the claim is thus preempted "unless we can say that West's action to recover damages for his being bumped from the flight does not

"relate to" airline services." *West*, at 153. The *West* majority, however, pounced on the caveat at the end of *Morales* and baldly concluded that the claims asserted were so tenuous as to present a "borderline question." *Id.* at 151. I fail to see how the *West* court was presented with a "borderline question." [10] In any event, as will be explained below, we are certainly not presented with a "borderline question" in this case.

In *Salley*, state-law claims and a federal claim under § 1374 were brought based on the airline's refusal to transport plaintiffs. The district court initially granted partial summary judgment, holding that the state-law claims were preempted under § 1305. Upon Salleys' motion for reconsideration, however, the court held that such claims were not preempted on two grounds: 1) the Salleys would otherwise be left without a cause of action; and 2) the claims were not in conflict with any provision of the ADA. *Salley,* 723 F.Supp. at 1166. As I have noted above, the presumption against preemption of state-law remedies where no federal remedy exists arises only in the context of implied preemption. *Stamps,* 984 F.2d at 1425; *see also Caterpillar Inc.,* 482 U.S. at 392, 107 S.Ct. at 2429. Since § 1305 clearly provides for express preemption, I do not address the possible lack of a cause of action in determining whether appellants' state-law claims are preempted. The second ground relied upon in *Salley* has been expressly rejected in *Morales*. The *Morales* court held that "nothing in the language of § 1305(a)(1) suggests that its 'relating to' preemption is limited to *inconsistent* state regulation; and once again our ERISA cases have settled the matter: 'The preemption provision ... displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements.'" *Morales,* —— U.S. at ——, 112 S.Ct. at 2038.

The final case upon which the majority relies is the *Stewart* case. In *Stewart*, the nose wheel of the aircraft deflated during flight causing a passenger to be jostled back and forth and allegedly suffer injuries. Said

---

**10.** As the dissent in *West* noted, "an airline's boarding practices certainly come within the ambit of the "airline services" which it provides to its customers. We expressly recognized this in our original opinion." *Id.* at 153.

passenger brought state-law tort claims, asserting that American negligently *maintained and operated* the aircraft. Although the court did indeed hold that said claims were not preempted by § 1305, the majority fails to take notice of the reasoning underlying such holding; reasoning I find to be particularly persuasive. The *Stewart* court opined: "it is far from clear that, in the instant case, Plaintiff's claims relate to "services" within the meaning of § 1305. First, those cases which have held that a Plaintiff's claims were claims relating to "services" and therefore preempted by § 1305 all involved services provided by individual airline employees *directly to* passengers, such as ticketing, boarding, in-flight service, and the like." *Stewart*, 776 F.Supp. at 1197 (emphasis added).[11] The court then concluded that: "In the instant case, Plaintiff's claims are more like those arising out of an air crash than those considered in *O'Carroll* and *Smith*. Plaintiff does not allege that Defendant negligently provided such services as boarding, ticketing, and the like. Rather, he simply alleges that he was injured when the airplane malfunctioned during the course of his flight, and that Defendants' negligent maintenance and operation was the legal and proximate cause of his injuries." *Id.* at 1198.[12]

As noted above, *Morales* instructs us that claims "relate to" "services" if they have a "connection with" or "reference to" "services." In our case, appellant brought a state law negligence claim, alleging that a Continental flight attendant dropped a bag from an overhead storage bin onto her head. In light of *Morales* and the aforementioned ordinary meaning ascribed to the term "servic-

es," I fail to see how one can determine that such a claim does not have a "connection with" or "reference to" "services." As in *Baugh*, the alleged injury here occurred during a flight and was caused by a flight attendant in the course of employment, such that the negligence action arises out of the services provided by the airline. *Baugh*, at 3. Furthermore, as noted above, the cases which have held that a plaintiff's claims were related to services and thus preempted all involved "services provided by individual airline employees directly to passengers, such as ticketing, boarding, in-flight service, and the like." *Stewart*, 776 F.Supp. at 1197. If a negligence claim arising out of a flight attendant's retrieval of a passenger's bag does not "relate to" services, I cannot imagine what would.

Our last task is to address whether the negligence claim asserted by appellant, although related to services, affects airline services in too tenuous, remote, or peripheral a manner to be preempted by § 1305. *Morales*, —— U.S. at ——, 112 S.Ct. at 2040. The majority concluded, as did the *Morales* majority, that the facts before us do not present a borderline question. Although I agree with the majority that we are not presented with a borderline question, I believe that the facts before us take us to the opposite side of the border. The claim at issue *directly* affects airline services because it immediately arises from the allegedly inadequate provision of such services. *Williams v. Express Airlines I, Inc.*, 825 F.Supp. 831, 833 (W.D.Tenn.1993). In addition, the claim has the potential either to increase the cost of providing such services or coerce airlines

---

11. The *Stewart* court then cited *O'Carroll, Smith, Anderson* and *Von Anhalt* as examples of such cases. *Id.*

12. The court observed that several courts have held that claims arising out of an "air crash" were not preempted. *Id.* (citing *Air Crash Disaster at John F. Kennedy Int'l Airport*, 635 F.2d 67, 74 (2d Cir.1980); *In re Air Crash Disaster at Sioux City, Iowa*, 734 F.Supp. 1425, 1428 (N.D.Ill.1990); *In re Air Crash Disaster at Stapleton Int'l Airport*, 721 F.Supp. 1185, 1187 (D.Colo.1988)). *Id.* at 1198. Each of these courts relied on the § 1506 "savings clause" to conclude that the claims were not preempted. The *Morales* court, however, has since expressly

rejected this argument in holding that Congress did not intend "to undermine this carefully drawn statute through a general savings clause." *Morales*, —— U.S. at ——, 112 S.Ct. at 2037; *see also Baugh*, at 4–5; *O'Carroll*, 863 F.2d at 13. Although we concur in the result in those cases, in light of *Morales* we would reach such result on different grounds. Apparently, each case involved claims arising out of maintenance and operation of the aircraft, rather than "services" directly provided to passengers by an airline employee. Therefore, as was decided in *Stewart*, the claims would not be preempted by § 1305(a)(1).

into discontinuing them.[13] I also note that those cases [14] which have held that a claim did not relate to services, or that such relation was too tenuous, involved claims which arose from allegedly negligent maintenance, operation or design of aircraft or airport facilities.[15]

I must address one final issue which has not been addressed in any reported case dealing with § 1305 preemption. Section 1371(q)(1) of the ADA, in pertinent part, provides: "No certificate shall be issued or remain in effect unless ... the air carrier ... complies with regulations or orders issued by the Board governing the filing and approval of policies of insurance ... which are conditioned to pay, within the amount of such insurance, amounts for which such ... air carrier may become liable for bodily injuries to or the death of any person ... resulting from the operation or maintenance of aircraft under such certificate." 49 U.S.C.A.App. § 1371(q)(1) (West Pamph. 1993). Appellant contends that since § 1371(q)(1) of the ADA requires airlines to carry liability insurance, it would be nonsensical to conclude that Congress intended to preempt personal injury claims under § 1305(a)(1). I agree that in expounding a statute the court must consider the provisions of the whole law. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987). I disagree, however, that the aforementioned sections are conflicting. The United States Supreme Court has said: "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983). Section 1305(a)(1) refers to "rates, routes, or services," while § 1371(q)(1) refers to bodily injury or death "resulting from the operation or maintenance of aircraft." Had Congress intended to require liability insurance for bodily injury resulting from "services," it presumably would have referred to "services" expressly in § 1371 as it did in § 1305. Likewise, had Congress intended to preempt state laws relating to the operation or maintenance of any air carrier, it presumably would have expressly done so in § 1305. Since Congress employed different language in the two sections, I would refrain from concluding that such language has the same meaning in each. *Id.* As did the *Russello* court, I do not ascribe this difference to a mere mistake in draftsmanship. *Id.*

Section 1305(a)(1) unambiguously provides for express preemption of state law claims "relating to" "services." *See Morales*, — U.S. at —, 112 S.Ct. at 2037. As many courts have instructed, we must "take the intent of Congress ... to be that which its language clearly sets forth." *See, e.g., United States v. Evinger*, 919 F.2d 381, 383 (5th Cir.1990) (citing *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 352, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961)). I am thus compelled by both *Morales* and the rules of statutory construction to conclude, as did the

---

13. The court in *Hodges* states that the Airline Deregulation Act was concerned solely with economics and not with safety deregulation citing the Civil Aeronautics Board's conclusion that "preemption extends to all of the economic factors that go into the provision of the *quid pro quo* for passenger's [sic] fare, including flight frequency and timing, liability limits, reservation and boarding practices, insurance, smoking rules, meal service, entertainment, [and] bonding and corporate financing." *Hodges*, 4 F.3d at 354–55. Then the court stated that enforcement of state tort remedies would not have the forbidden significant effect on airline service. *Id.* at 355. This is a contradiction within itself since a large verdict from a state cause of action can definitely affect the cost of services furnished by the airlines.

14. Other than *West, Heller* and *Margolis,* which we have found to be unpersuasive for the aforementioned reasons.

15. *Public Health Trust v. Lake Aircraft, Inc.*, 992 F.2d 291, 294–95 (11th Cir.1993). (design defect claims unrelated to airline rates, routes or services and thus not preempted); *In re Air Disaster*, 819 F.Supp. 1352, 1363 (E.D.Mich.1993) (negligence claims against airline and pilot arising out of plane crash related to airline services in too tenuous a manner to warrant preemption); *Butcher v. City of Houston*, 813 F.Supp. 515, 518 (S.D.Tex.1993) ("services" does not contemplate maintenance of one's building or terminal space).

trial court, that appellant's state-law negligence claims are preempted.

I respectfully dissent.